INDUSTRIAL INDEMNITY EXCHANGE. v. RATCLIFF et al.

No. 3606.

Court of Civil Appeals of Texas. Beaumont.

Feb. 27, 1940.

Rehearing Denied March 13, 1940.

B. L. Collins, of Lufkin, and Lightfoot, Robertson, Gano & Johnston, of Fort Worth, for appellant.

C. S. Williams and Collins, Pate, Hatchell & Garrison, all of Lufkin, for appellees.

O'QUINN, Justice.

This is a workmen's compensation case. Angelina County Lumber Company was the employer, H. A. Ratcliff the employee, and Industrial Indemnity Exchange the compensation insurance carrier. On April 6, 1938, while engaged in the course of his employment as an employee of Angelina County Lumber Company, appellee received an injury for which he claimed compensation. He duly filed his claim before the Industrial Accident Board. On November 17, 1938, the Board made its final ruling and award, and appellee duly gave notice that he would not abide said award, and duly filed this suit in the district court of Angelina County, Texas, to set aside said award and to recover compensation as for total and permanent disability.

Appellant, Industrial Indemnity Exchange, answered by general demurrer, special exceptions, general denial, and specially denied (a) that notice of injury was given to appellant and the Industrial Accident Board within the time and in the manner required by law; and (b) that any valid claim for compensation was filed with the Board for an amount to confer jurisdiction upon the district court; and (c) that any valid award was made by the Industrial Accident Board from which an appeal could be taken. Further specially answering, appellant alleged that it had made certain payments to appellee of compensation, but that said payments were made under a misapprehension of his wage rate, which misapprehension arose out of untrue statements made to it by appellee concerning his injury and the wages he had earned, and hence it was not bound in any way by the making of such payments.

At the close of the evidence, appellant moved for an instructed verdict which was refused. The case was then tried to a jury upon special issues which were answered favorable to appellee, and judgment rendered for appellee for compensation for 401 weeks for total and permanent disability at the rate of $9.97 per week, with credit for 15 payments at such rate made theretofore by appellant. Motion for a new trial was overruled and we have the case for review.

■ Appellant's first six propositions are presented grouped. None of these propositions refer to any assignment of error to which they relate, or upon which they are based. We have made careful investigation of the 68 assignments in the back of the brief, and fail to find any of them substantially the same as either of the propositions grouped, but rather a combination of the matters stated in the assignments. We doubt the sufficiency of such propositions, but have given them consideration. The first asserts that the submission of special issue 4 was error because it was misleading, and confusing in that it was contradictory to the definition of the term "injury" given by the court, was too general in that it permitted consideration by the jury of any affected portion of appellee's body when under the pleadings the original damage was to appellee's foot, and the issue, as framed, permitted the jury to speculate whether such affected parts of appellee's body, other than his leg, was affected by reason of the injuries to his foot

or leg, without regard as to whether or not there was any infection or disease naturally resulting from the original damage to appellee's foot "That extended beyond plaintiff's leg below the knee". Issue No. 4, read: "Do you find from a preponderance of the evidence that such injury, if any, to plaintiff's left leg has affected and involved parts of his body other than his leg"?

The jury answered "Yes". The issue was not subject to the objections levelled against it. It plainly inquired whether the injury to plaintiff's leg had affected other parts of his body. Under the pleadings and the evidence the issue was raised, and the issue was neither misleading, confusing nor too general.

■ The second proposition urges error in the submission of special issue 5. It was: "Do you find from a preponderance of the evidence that H. A. Ratcliff sustained an injury to his back as a direct and natural result of being struck by such conveyor chain?"

The jury answered "Yes". Appellant objected to this issue that it was too general, was not limited to the pleadings or evidence as to what portion of appellee's back sustained injury, and permitted the jury to speculate "all up and down the plaintiff's back without regard to the testimony, and because such issue permits the jury to make a finding irrespective of the pleadings or evidence and irrespective of defendant's liability under the Workmen's Compensation Act with reference to what constitutes a compensable injury under the term 'injury' as given by the court, and without regard to whether or not such injury to the back was in anywise connected with a general injury, or a specific injury". This assignment is without merit. Appellee plead and the undisputed evidence showed that appellee was injured by being struck by conveyor chain while at work at a saw mill, and that he suffered a broken or fractured left leg about four inches above the ankle; that the blow of the chain knocked him down and in falling he struck his back against some timbers causing severe injuries to his back. We think the allegation was sufficiently specific and would admit proof of injury to any portion of the back thus injured. It did not permit the jury to either speculate, or to find an injury to the back "irrespective of the pleadings or evidence". Nor was the issue subject to the objections that the jury could

find a compensable injury whether or not the injury to the back was in anywise connected with a general injury, or to a specific injury. It being alleged with the injury to appellee's leg that the whole of the injuries suffered resulted in total incapacity, the issue very properly inquired as to the injury to the back.

The third proposition asserts error in submitting special issue 6. It was: "Do you find from a preponderance of the evidence that plaintiff H. A. Ratcliff, sustained total incapacity as a natural result of injury sustained by him, if any, from being struck by such conveyor chain"?

The jury answered "Yes". Appellant objected to this issue that it was multifarious, misleading, confusing to the minds of the jurors because it permitted a finding of total disability due to any injury that appellee may have suffered without regard to the definition of "injury" given by the court; that the issue was too broad and not limited to the pleading for in that appellee had suffered an original injury to the foot, and so the issue permitted the jury to find that he had suffered total incapacity by reason of a specific injury to his foot. This contention is without merit. The pleadings of appellee were full and specific as to his injuries received from being struck by the conveyor chain, and of the results of these injuries, and that from these injuries he had suffered total incapacity. The issue was not subject to the exceptions.

What we have said disposes of the fourth, fifth and sixth propositions. The answers to each of the issues complained, were amply sustained by the evidence.

Appellant's seventh proposition further objecting to special issue 4, reading: "Do you find from a preponderance of the evidence that such injury, if any, to plaintiff's left leg has affected and involved parts of his body other than his leg", that such issue was upon the weight of the testimony in that it assumed the plaintiff had suffered an injury to his leg, when the facts showed that the injury "was only to that portion of plaintiff's left leg below the knee, and therefore involved a foot injury and not a leg injury".

The issue was not upon the weight of the evidence, nor did it assume that appellee had sustained an injury to his leg. The undisputed evidence—admitted by appellant—showed that appellee suffered a broken—or multiple fracture—of his left leg about four inches above the ankle. Besides the query was prefaced by the words "if any", the usual and proper way in which to word questions like the one submitted. Moreover, in answer to special issue 2 the jury had answered that appellee had sustained an injury to his "left leg below the knee" by reason of being struck by the conveyor chain, and that he was so struck is not disputed. The assignment is without force.

Appellant submits propositions 8 to 31, inclusive, (24 of them) grouped. These propositions relate to various matters, such as insufficiency of the evidence to raise the issues, insufficiency of the evidence to support the jury's findings, the erroneous submission of certain issues, the erroneous rendition of judgment for total and permanent disability because the injury was specific and confined to the foot, and other matters variously presented. We find no basis in the rules for such grouping. However, we have considered the propositions. We overrule all the propositions complaining of lack of evidence either to warrant the submission of the issues complained, or to support the findings of the jury. The pleadings of appellee were clear and ample to raise each and every issue submitted, and the evidence not only raised the issues but supported the jury's findings. The 28th proposition complained that the court erred in submitting special issue No. 34 which inquired whether or not appellee's incapacity, if any, which he had sustained was not and would not be confined solely to his left leg. Under this proposition it is insisted that the evidence showed that the injury was confined to his leg below the knee wherefore the incapacity was, as a matter of law, limited to the incapacity from a specific injury. The 30th proposition is that the submission of special issue 35, which inquired whether appellee's incapacity, if any, which he sustained was not and would not be confined solely to his left leg below the knee, was error because such issue was not supported either by the pleadings or the evidence, and under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., the incapacity was limited to the foot, as a matter of law, the injury being so limited. The pleadings and the evidence raised these issues, and the findings of the jury have ample support in the evidence. The jury answered each of these in favor of appellee, that is, that the incapacity of appellee was not and would not be confined solely

to his left leg, and that such incapacity was not and would not be confined solely to his left leg below the knee. The insistence that appellee's injury was confined to his left leg below the knee, and was therefore a specific injury, and so, as a matter of law, the incapacity growing out of the injury must be confined to such specific injury, is without force. The pleadings of appellee alleged injuries not only to his leg, but to his back, hip and side, and that such injuries had so affected him generally as to result in his total incapacity to labor, and the jury found in his favor, and the evidence supports such finding.

We overrule appellant's contention that Dr. Denman, witness for appellee, could not testify that in his opinion appellee would not be able to secure and retain employment in the future because of the incapacity occasioned by the injuries he received. The proposition rather overreaches the real point in controversy. Appellant insists that Dr. Denman could not testify to the effect that in his opinion appellee would not be able to secure and retain employment in the future because of the injury to his foot. As we read the record this occurred: "Q. Doctor, from your knowledge of this man's condition developed during the period of his treatment under you, and from the history he gave you, what is your opinion with reference to whether he is totally disabled or otherwise"?

Upon objection, the question was reframed to read: "Q. Dr. Denman, from your knowledge of this man's condition, from his history that he gave you, and which you have stated here, what is your opinion with reference to whether or not this man is able to do manual labor"?

Objection to this was overruled. The doctor answered "No, he is not."

"Q. On what do you base that opinion? A. I base that opinion on my objective findings, as stated—I mean objective signs —I know by having seen and felt and know that is true—ankylosis and destruction of the arch. I know there is destruction of the arch that affects the muscles as described up to and including the hip, from non-use. I think that answers the question.

"Q. Dr. Denman, would that condition which you have described affect his body as high as the back? A. I think when a man has that much trouble his whole leg and back is affected.

"Q. I believe that you stated that your opinion is that that will result from having to lean to one side, to cause a permanent destruction of the muscles of his back? A. I do not know of any mill work that does not require some bending, exertion or standing, that he could do—or anything else that is manual labor.

"Q. Could this man stoop or bend without suffering pain or discomfort? A. No, sir.

"Q. Dr. Denman, what is you opinion, taking into consideration your knowledge of this man's condition over the period you treated him, and the history he gave you, what is your opinion with reference to possible duration of this disability in the future? A. He has got total and permanent disability".

On cross-examination, he testified among other things:

"Q. In other words, from objective symptoms, you found the condition there upon the back, leg and foot? A. Yes, sir.

\* \* \* \* \*

"Q. Did I understand you awhile ago to testify on direct examination, his condition, I believe you said, was one hundred per cent total? A. Sure; I still say it.

\* \* \* \* \*

"Q. You spoke awhile ago of his being totally disabled; by that you mean that he is unable to do anything, don't you? A. Well, he can walk around, and things like that; I don't mean that he can't walk, or can't sit down, or can't shell peanuts, but still he can't do manual labor.

"Q. In other words, you don't class shelling peanuts as manual labor? A. No, sir; I don't believe I do.

"Q. Could he handle a broom, sweeping? A. I imagine he could sweep awhile with a broom.

"Q. Could he do a little work on a farm? A. He might do a little if there wasn't much walking to do.

"Q. Could he go out and handle heavy moving timber? A. No, sir; he could never do that.

"Q. He wouldn't be able to plow much? A. No, sir.

\* \* \* \* \*

"Q. The thing is, he can do some work at which he doesn't have to stand on his feet, he can work? A. I believe he could work if he didn't have to do much walking, standing or lifting.

"Q. Yet you say he is totally disabled? A. Not for many things; I don't think anybody would ever be totally disabled unless they are dead, in the way you are explaining it.

"Q. When you say he is permanently disabled, you mean all of his life? A. I mean that he is permanently disabled, in my opinion, all his life, where it requires him to use that leg to any appreciable extent."

He further testified that he found certain of the muscles of the body atrophied, and the nerves affected—and that the conditions were—"A. Yes, sir; I said that. I examined him several times since, as I told you awhile ago and it progressively grew worse".

It is seen that the doctor was not basing his opinion on the injury to his foot only. He had testified to what he found when appellee came to him for treatment, his examination, and the complaints made to him by appellee, and the history of the occurrence as given him by appellee. His observations of appellee's condition on the many times he saw and treated him. His opinion was based upon the full knowledge possessed by the doctor growing out of careful examinations, treatment and familiarity with every phase of appellee's case.

■ The 33rd, 34th, 35th, and 36th propositions are presented grouped. The 33rd and 34th urge error in the court's refusing to give its requested special issue No. 3 as to whether the injury of appellee, if any, was not limited to the left foot; the 35th that the court erred in refusing its special issue No. 2, as to whether the injury, if any, sustained by appellee was not limited to the left leg below the knee; and the 36th that the court erred in refusing its special issue No. 1 inquiring as to whether the injury suffered by appellee was not limited to the left leg. The court submitted special issue No. 34, which was: "Do you find from a preponderance of the evidence that the incapacity, if any, which plaintiff has sustained or will sustain as a result of the injury, if any, sustained by him on April 6, 1938, is not and will not be confined solely to his left leg"?

And special issue No. 35, as follows: "Do you find from a preponderance of the evidence that the incapacity, if any, sustained by him on April 6, 1938, is not and will not be confined solely to his left leg below the knee".

These issues were given without objection of appellant. We think they substantially covered the matters complained. The gist of appellant's complaint is that appellee suffered only an injury to his left leg and foot, and so the incapacity was from a specific injury, and that the question of a general injury was improperly considered and submitted. This contention is far from correct. Appellee plead injuries to his foot, leg, back, hip and side occasioned by being struck by a conveyor chain. He so complained to the doctor, and testified fully covering each and all of these alleged injuries, and that at the time of the trial he still constantly suffered much pain, was disabled to work, could not sleep and that his situation was gradually becoming worse. This was corroborated by Doctor Denman who had treated him all the time. Appellant seems to ignore all evidence of general disability because the original injury, it insists, was to the foot or leg below the knee, and so was a specific injury only, and that the court erred in submitting issues as to total incapacity raised by appellee's pleading and the evidence, and asserts that such issues were raised neither by the pleading nor evidence and that the findings of the jury were not supported by the evidence. None of these contentions have merit, and we overrule all of them.

■ The 37th and 38th propositions complain that special issues Nos. 10, 11, 12, 12–A and 13, relating to partial incapacity, were submitted conditionally—to be answered only in the event that they had answered special issues 6 or 8 "No", which was reversible error. Special issue 6 inquired whether appellee had suffered total incapacity, and was answered "Yes" by the jury; and special issue No. 8 inquired whether total incapacity, if any, was permanent, to which the jury answered "Yes". This was followed by special issue No. 8–A: "Do you find from a preponderance of the evidence that such total incapacity, if any, was not only temporary", this was answered "Yes"; and special issue No. 8–B: "Do you find from a preponderance of the evidence that H. A. Ratcliff, plaintiff, has not sustained and will not sustain only partial incapacity as a result of the injury, if any, suffered by him on April 6, 1938", this was answered "Yes". These issues were submitted without condition, and were answered independently of any answer made to any other issue. So it is seen that the grava-

men of the asserted offending issues disappears, for the issues 8-A and 8-B covered the matters complained. Further, special issue No. 12-A, which reads: "Do you find from a preponderance of the evidence that such partial incapacity, if any, is not and will not be only temporary", though not answered, was submitted unconditionally, and no objection was made to the reception of the verdict because not answered. The assignments are overruled.

What we have said disposes of the 39th proposition.

■ We think that the submission of special issues Nos. 34 and 35, which were not in any manner objected to, either as to form or substance, and the jury's answers thereto avoid any asserted errors urged by appellant in its propositions 40, 41, 42, and 43. They are overruled.

■ The 44th and 45th propositions urge reversible error in the court's failure to submit the question of appellee's wage rate to the jury, and that the court was without authority to make an independent finding of $9.97 as the average weekly wage rate. The assignments are overruled. It is without dispute, in fact appellant plead that it had paid appellee fifteen weeks' compensation at the rate of $9.97 per week. So it appears that appellant had recognized appellee's right to recover at that rate, and had actually paid him for fifteen weeks' compensation at that rate. Undisputed facts do not have to be submitted to the jury for a finding. The fact that appellee's wage was undisputed authorized the court to find in accordance with such undisputed fact. Commercial Standard Ins. Co. v. De Hart, Tex.Civ. App., 47 S.W.2d 898; Texas Employers Ins. Ass'n v. Hamor, Tex.Civ.App., 97 S.W. 2d 1041; Traders & General Ins. Co. v. Slusser, Tex.Civ.App., 110 S.W.2d 598; Southern Surety Co. v. Eppler, Tex.Civ. App., 26 S.W.2d 697, writ refused.

■ The 46th proposition asserts error in the court's refusing to admit in evidence testimony that appellee after his injury, and pending his efforts to secure compensation, made application to the Texas Unemployment Commission for aid for in that said application contained statements contradictory of his testimony as to his incapacity to work given on the trial of the case, and was proper as impeachment evidence. The objection to the admission of the application was that the instrument

offered purported to be a copy of the original, did not bear any one's signature, had no certificate on it that it was a correct copy of the original, which it appeared was on file in Austin, and that the original was the best evidence. Its rejection was not error. There was no explanation of why a correct certified copy was not obtained, nor who prepared the offered copy, nor any proof certainly identifying the contents of the supposed copy with the original. It is not contended that any effort was made to have the original, nor of a certified copy of same, which might have been had.

No reversible error being shown, the judgment should be affirmed, and it is so ordered.

Affirmed.