398

LIBERTY MUT. INS. CO. v. MURPHY.

No. 14867.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 10, 1947.

Rehearing Denied Nov. 7, 1947.

Cantey, Hanger, McKnight & Johnson and W. B. Thompson, all of Fort Worth, for appellant.

Rawlings, Sayers & Scurlock, of Fort Worth, for appellee.

HALL, Justice.

One Minnie Murphy instituted this suit in a district court of Tarrant County, Texas, as surviving wife and sole beneficiary of her late husband, Willie Murphy, who died on or about December 17, 1945, against the Liberty Mutual Insurance Company, appellant herein, for death benefits claimed to be

due her because of an injury sustained by her husband on or about July 2, 1945, while in the employment of Armour and Company, Fort Worth, Texas. The case was submitted to a jury, which found that Willie Murphy sustained an injury while in the course of employment with said company; that such injury was a producing cause of his death; that his death was not caused solely by heart disease, neither was his death caused by a heart attack solely. Whereupon judgment was entered for appellee, Minnie Murphy, upon such verdict, for the sum of 360 weeks death benefits, over the objections of the appellant. Hence this appeal, based upon 9 points of error.

Points Nos. 1, 2, 3, 4, and 9 are grouped together for the purpose of discussion because they relate to the same subject matter, to-wit, that the court erred in entering judgment on the verdict for the reason that the same was against the preponderance of credible testimony; that there was insufficient evidence to support the findings of the jury; that the verdict indicated a high degree of bias and prejudice against appellant and that special issue No. 3 should not have been given, which is as follows: "Do you find from a preponderance of the evidence that the injury, if any, sustained by Willie Murphy on or about July 2, 1945, was a producing cause of his death?" on the ground that the undisputed testimony was to the effect that the death of Murphy was caused by heart disease, and that the issue, as worded, enabled the jury to speculate as to whether or not the injury itself, or its effects, caused the death of the deceased, or contributed to it.

The undisputed facts reveal that on or about December 23, 1944, Willie Murphy did suffer a severe heart attack, which was diagnosed by his physician to be that of coronary infarction, and remained in a hospital until January 8, 1945, when he returned home. He then returned to work at Armour and Company during the latter part of February, and worked rather regularly until he sustained the injury in question on July 2, of the same year.

The undisputed evidence also reveals that while Willie Murphy was waxing a belt, that worked in connection with a hoist and running through two pulleys fastened to the ceiling, he got his arm caught in the belt which dragged him to the 12-inch pulley, and when first seen by one of the witnesses, he was hanging there by his left arm. There were some men around him trying to give him relief. Murphy's arm was caught between the two pulleys, which were about two inches apart and fastened to the ceiling. The witness was not present at the time of the accident, but he judged it took about 20 seconds to get Willie Murphy relief from the time that he started to assist; the men pulled up barrels and turned them over and got up to Murphy, and cut the belt, but this did not release him; that he, the witness, pulled back on the hoist, which released the pulleys, thereby rolling Murphy's arm out; that Murphy was evidently jerked from a ladder which was nearby.

He was taken immediately to a hospital and given medication to relieve him of pain. He was removed to his home the next day, where, his wife testified, she applied hot towels in an effort to give him some relief, and that she had to continue to apply hot applications to his arm and shoulder every night until he passed away.

Dr. Hobart Deaton testified in behalf of the appellant in substance that he waited on Murphy at the time of the injury, when he was taken to the hospital; that it was his understanding that Murphy had been injured by being suspended in a pulley; that he did see cuts and bruises on the left forearm, rather superficial; that they were mere scratches and abrasions of the skin; that they were between the wrist and elbow on his left arm and that he had evidence of bruises on his left shoulder and some other abrasions up and down the arm between the shoulder and the hand; that he administered medication to him for the relief of pain; that the patient came to his office regularly for a considerable period of time, the last date being September 12, which was some few days over two months after the injury; that during this time he was being treated for subeltoib bursitis, and neuritis of his shoulder, which he explained was an irritated condition of the nerves, due to the injury; that the word subeltoib means the muscle that abducts the arm; it is the muscle that forms the rounded prominence

of the shoulder. Dr. Deaton testified that during this period of time he administered medication for pain and also inserted vitamin B intravenously, which is the treatment he always uses in a case of neuritis, or painful muscle conditions. He also gave him other medicines for pain and encouraged him to gradually raise his arm up. He also advised the use of heat. He testified further that his patient improved and was better than when he first saw him; that he would complain of pain when he attempted to bring his arm any higher than level position.

He further testified that in his opinion, the accident was not the cause of the death of Willie Murphy, neither was it a contributing cause of his death. He further testified that the idleness and the resting and staying in bed which the deceased went through, from the time he was injured to his death, without doing any more work, would tend to be favorable to his heart condition.

All of the doctors testified that there are no muscles outside of the heart that are connected with the heart.

Dr. Charles F. Clayton testified in behalf of appellant substantially as follows:

That the deceased, Willie Murphy, became a patient of his on September 24, 1945, and that he continued personally to see the patient until December 5, 1945; that he administered physio-therapy; that the patient evidently had some treatments after December 5, 1945; that the patient had not been dismissed from his care. He testified that he was not a heart specialist and that he depended upon other doctors and nurses to make the examinations of the heart when he undertook an operation; that he knew generally the functions of the heart and diseases that might be connected therewith. There is no testimony to the effect that he had diagnosed the case as a heart case, but that he was treating the patient for the injuries to his left shoulder and arm; that the patient had improved some from the first time he saw him; that his arm was movable with some restriction of motion and that he complained of pain in and around the shoulder at the time he last saw him.

After a detailed hypothetical question was propounded to him, giving the complete history of the deceased from the time he had his first heart attack on December 23, 1944, until his death, the doctor testified that the injury which the deceased received on July 2, 1945, had nothing to do with the cause of his death on December 17, 1945. If the accident was to have anything to do with his death, then it would have occurred at the time of the accident, or shortly thereafter, but where the heart attack came five and a half months after the accident, the injury on July 2, 1945, would not have any relation to the attack because it would be too remote in time, especially when the man had practically recovered from his accident. On cross examination, Dr. Clayton admitted treatment was administered to the deceased after the date on which he had seen him last. He denied the fact that severe pain will tend to precipitate a heart attack, at least that he had never heard of such a case.

Dr. Gerald A. King and Dr. Sidney Price, of Fort Worth, Texas, testified in behalf of appellee, and in answer to hypothetical questions propounded to them setting out the history of the case, Dr. King testified as follows:

"A. In my opinion the accident in this case certainly did contribute toward it. Of course, we know they can die—that patients dying of a coronary lesion, that it was the heart, the infarct; but certainly an accident like that, of that nature, would cause a man to suffer pain for several months, and it is a known fact that pain accelerates the pulse and an accelerated pulse would place that much more labor upon the heart muscles, and pain lasting from July to December certainly would contribute largely toward the death of the man.

"Q. Doctor, one more question: In cases where people suffer heart attacks where they have coronary sclerosis and suffer a heart attack and confined to the hospital for a couple of weeks and then get up and able to resume work, at least light work, within about two months, are there frequently such cases where they live for a period of many years after such an attack? A. Yes. I know of one particular case that has been living for 12 years after his first

attack. I notice that the diagnosis at first was coronary sclerosis. That is his first attack, and in coronary occlusion he certainly would have a life expectancy, under reasonable circumstances, of a few years anyway."

Dr. Sidney Price testified in answer to practically the same hypothetical question which related the history of the deceased's actions until his death, beginning from the date of his first heart attack, together with the following question having been propounded to him in connection with the hypothetical question:

"Q. Now, Doctor, with that state of facts I want to ask you if in your opinion it can be said with reasonable probability that the injury and the pain, and continuous pain produced by that injury, and the pain immediately preceding this attack on the night of December 17th could and probably did contribute to bring on that heart attack?"

And his answer to the same was, "I would think so, yes, sir."

He further testified that the injury and the pain derived therefrom would probably precipitate the condition and bring on the attack or recurring attacks.

■■ We think this testimony, together with the testimony of other witnesses, which space will not permit quoting, is sufficient to show that there was reasonable basis for the jury to find that the deceased, while in the employment of Armour and Company, sustained a physical exertion which finally resulted in hastening the death of the deceased. As stated in the case of Massachusetts Bonding and Insurance Company v. Massey et al., 5 Cir., 123 F.2d 447, 449, " * * * The only thing the act requires is that the death or injury for which compensation is sought, be shown to be wholly or partly the result of some work or activity connected with the employment, and not the mere result of disease, which operating in its ordinary and natural course and without regard to the employment and its activities brings about [the employee's] death."

In the case of Texas Employers' Insurance Association v. Parr, Tex.Com.App., 30 S.W.2d 305, we find that it is no defense that the injuries would not have been as great or that death would not have occurred if the employee had been in a healthy condition.

■ There seems to be no question but that the employee was injured; it also seems that the doctors while waiting on him devoted their entire time to the injuries and not to any heart trouble. The record is silent as to doctors' administering medicine or treatments to him for heart trouble after January 8, 1945. At any rate, it was the trier of the facts' duty to determine, under the state of facts in this case, as to whether or not the injury contributed to the cause of his death. They found that it did. We think there is evidence to support such finding. If the jury had found that the injury did not have anything to do with the cause of his death, there would be sufficient evidence to support such finding. Since the record shows that the deceased was suspended for some time in mid-air up to the top of the ceiling hanging by his arm pinched between two pulleys, after being jammed there by force, it is not within our province, under the facts in this record, to say that, as a matter of law, such injury did not contribute to the cause of his death.

■ The appellant relies to some extent upon the statement made in the death certificate, wherein the doctor, who arrived after the death of the deceased, stated that the primary cause of death was "coronary infarction". This was the same doctor that waited on Murphy at the time of his heart attack on December 23, 1944, but he had not seen Murphy as a patient from the time he released him on January 8, 1945, until after Murphy's death on December 17, 1945. At the time he made out the death certificate, the evidence shows that he had no information whatever about the injury which was sustained by Murphy, neither did he know of the intense pain and suffering endured by Murphy from July 2nd, until his death. The jury evidently did not attach any particular significance to the doctor's conclusions inserted in the death certificate. It is an evident fact that the heart fails when anyone dies. What causes the heart to fail is usually a question of fact for the jury to determine, and it is the duty

of the court to look with favor toward such findings.

We do not find the undisputed evidence reveals that the death of the employee in this case was due directly to an independent intervening cause having no connection with or relation to the original injury. The case at bar distinguishes itself from the case of Texas Employers' Insurance Association v. Burnett et al., 129 Tex. 407, 105 S.W.2d 200, relied upon by appellant, in that, in the instant case the conflicting testimony shows that the accident caused the patient to suffer pain and that such pain over several months would cause acceleration of the pulse, and that such acceleration would place additional labor upon the heart muscles which would in turn contribute largely toward death, thereby producing a causal connection between the injury and the death of the employee; while in the case cited supra, the injured employee died from a case of typhoid fever contracted sometime after the injury, which was shown to have been the independent cause of the death, according to the facts set out in the Court of Civil Appeals' opinion, 77 S.W.2d 742.

Hence we overrule appellant's points Nos. 1, 2, 3, 4, and 9. Texas Indemnity Ins. Co. v. Staggs, 134 Tex. 318, 134 S.W.2d 1026; Texas Employers' Ins. Ass'n v. Jimenez, Tex.Civ.App., 267 S.W. 752, writ dismissed; Norwich Union Indemnity Co. v. Smith, Tex.Com.App., 12 S.W.2d 558; Texas Indemnity Ins. Co. v. Godsey, Tex. Civ.App., 143 S.W.2d 639, writ refused.

Appellant's propositions Nos. 5 and 6 complain of the trial court's definition of "producing cause", to-wit: "By the term 'producing cause' is meant a cause which in a natural and continual sequence, by itself, or in connection with another cause or causes produces *disability* (italics ours) or death of a person, and without which such disability or death would not have occurred."

Its complaint pertains to the term "disability" being inserted in a death benefit case. We readily agree with appellant that the word disability has no place in a death benefit case. It is a superfluous word, but we do not agree with appellant that such word in any way prejudiced its rights. We have been cited no cases, neither do we find one where the use of the word disability is held to be reversible error in a death case. We do agree with appellant that in the case of Texas Employers' Insurance Association v. Burnett, supra, the court intended by placing parentheses around the term "disability" to thereby show the proper alternative subject to fit the case. It has been held that the term "producing cause" is not such a term as is necessary to be defined, but that if an attempt is made to define it, it should be a correct one. Travelers Insurance Co. v. Johnson et al., Tex.Civ.App., 84 S.W.2d 354, writ dismissed; Strong v. Ætna Casualty & Surety Co., Tex.Civ.App., 170 S.W.2d 786. However, we are not called upon to decide that issue here, but we do find that the definition as given was a general one and that when the jury was required to apply the same to the issues, that they were not called upon to answer any question relative to the injury being a producing cause of any "disability"; but in special issue No. 3 the jury was called upon to find from a preponderance of the evidence that the injury sustained, if any, was a producing cause of "death". We overrule appellant's contention.

Appellant's point of error No. 7 complains of the trial court submitting special issue No. 1 in the following form: "Do you find from a preponderance of the evidence that Willie Murphy, now deceased, sustained an injury or injuries on or about July 2, 1945. Answer 'yes' or 'no'." Since the appellee relied on a general injury for recovery, there was no necessity for the issues to describe such injury in particular. This question was settled against appellant's contention in the case of Southern Underwriters et al. v. Boswell, 138 Tex. 255, 158 S.W.2d 280.

By its eighth proposition, appellant complains of that part of the trial court's definition of "personal injury", which was added to the statutory definition, Art. 8309, Sec. 1, to-wit: " * * * or the excitement, acceleration, or aggravation of any disease previously or subsequently existing by reason of said damage or harm to the physical structure of the body." The

gist of the complaint is that such portion of the definition allowed the jury to surmise and speculate in determining the nature of the injury and its causal effects. It cites four cases which hold that it is necessary to give the statutory definition, but none of these cases cited, nor have we found any, hold that under the facts in this kind of a case, it was error to give the added portion of the definition, supra.

The cases cited by appellant are: American Fidelity & Casualty Company v. Bradley, Tex.Civ.App., 70 S.W.2d 645; Traders & General Ins. Co. v. Hicks, Tex.Civ.App., 94 S.W.2d 824; Associated Indemnity Corp. v. Wilson, Tex.Civ.App., 41 S.W.2d 143; Commercial Standard Ins. Co. v. Noack, Tex.Com.App., 62 S.W.2d 72.

We find the pleadings and the evidence were sufficient to require the definition as given by the trial court, the appellee having pled that the injury sustained aggravated a diseased condition of Willie Murphy's heart to such an extent that it accelerated and contributed to the cause of his death. The appellant, by way of answer, alleged that the deceased did not die from an accidental injury, but that he died solely from heart disease. We find appellant's contention is overruled in the case of Southern Underwriters v. Parker, Tex.Civ.App., 129 S.W. 2d 738, writ refused, and cases cited therein.

Having overruled all of appellant's assignments of error, the judgment of the trial court is affirmed.