CITY OF AUSTIN, Appellant,

v.

Tommie Lee COOK, Appellee.

No. 10737.

Court of Civil Appeals of Texas.

Austin.

March 9, 1960.

Rehearing Denied March 30, 1960.

Doren R. Eskew, City Atty., C. J. Taylor, Jr., and Thomas R. Hunter, Asst. City Attys., Austin, for appellant.

E. H. Grindstaff, Weatherford, F. L. Kuykendall, Byrd & Davis, Austin, for appellee.

HUGHES, Justice.

This is a workmen's compensation case brought by appellee, Tommie Lee Cook, against the City of Austin, self insured under the provisions of Art. 8309e, Vernon's Ann.Civ.St.

Jury verdict and corresponding judgment were returned and entered for appellee for permanent and total disability.

We are of the opinion that appellant's third, fourth and fifth points should be sustained. They relate to the action of the Trial Court in a proceeding preliminary to commencement of the actual trial in granting appellee's motion to suppress testimony. The motion recited:

"Since defendant has steadfastly denied any liability throughout the entire period in which this claim has been pending, and has never tendered the benefits of any operation to plaintiff, testimony that an operation might cure or benefit the condition created by the injuries received by Tommie Lee Cook while employed by the City of Austin, the defendant is therefore not entitled to the use of any pleading or testimony which might indicate that such an operation would be beneficial."

Appellant filed a contest to the motion.

The order of the court granting the motion reads, in part:

" * * * it is therefore ordered, adjudged and decreed that unless defendant's counsel first obtains the permission of the court outside of the presence and hearing of the jury, defendant and its counsel are ordered not to mention, refer to, interrogate concerning, or attempt to convey to the jury in any manner any facts concerning the effects or desirability of plaintiff's having an operation or operations,

"It is further ordered, adjudged and decreed that defendant and its counsel warn and caution each and every one of its witnesses to strictly follow the same instructions."

On the trial of the case appellee called Dr. Albert LaLonde as a witness. While cross-examining this witness appellant indicated to the court that interrogation of the witness about matters covered by the order of suppression was desired and the jury was retired and by way of Bill of Exception appellant proved by Dr. LaLonde:

"Q. Dr. LaLonde, what is your prognosis of Tommie Lee Cook's condition? A. My prognosis is that he is going to remain totally and permanently disabled for manual labor.

"Q. What treatment have you recommended? A. I feel that he should have a lumbar disc operation.

"Q. A lumbar disc operation? A. Yes, sir.

"Q. Have you made that recommendation to Mr. Cook? A. Yes.

"Q. On how many occasions? A. I don't know.

"Q. When did you first make the recommendation? A. I did not make it at the time I first saw him in the hospital because he was in the acute phase of a disc protrusion and some individuals will recover without an operation. As time went on, it was obvious that he was not recovering and since he was disabled, we felt that an operation should be done to try to get him back to his previous status.

"Q. Do you recall when you first made the recommendation of an operation? A. I don't recall, but if they do not improve within six to eight weeks, we feel that an operation is warranted.

"Q. Has Mr. Cook submitted to that operation? A. No.

"Q. If Mr. Cook did have an operation to his back to alleviate his disc protrusion, in your medical opinion, would that alleviate his condition? A. It would stop his pain.

"Q. Is that the only thing it would do? A. That is the only thing the operation can do, is to stop the pain. It would not make the disc normal.

"Q. Would it decrease his disability? A. It would decrease his disability to the extent that not having constant pain, he might be able to do something more arduous. I do not feel, if one has a disc protrusion, that he should return to heavy work, and we make that recommendation to every one we do the operation on. Some people insist on doing it, and they have another disc protrusion.

\* \* \* \* \* \*

"Q. When was the last time *he* suggested to Mr. Cook that he have this operation? A. The last time that I saw him.

"Q. When was that? A. March 10, 1959."

The Industrial Accident Board acted adversely on appellee's claim on September 5, 1958. Appellee knew prior to that time that his doctor had recommended surgery.

We are not advised as to whether or not appellant had this information while the claim was before the Board.

Our opinion that the exclusion of the above testimony was erroneous is fortified by the recent action of the Supreme Court in granting an application for writ of error in the case of Truck Insurance Exchange v. Seelbach, 328 S.W.2d 346, Tex-

arkana Court of Civil Appeals where the court held that a similar motion to suppress was properly sustained. The notation by the Supreme Court in granting the writ was "granted on Point One." This point reads: "The Trial Court erred in sustaining plaintiff's motion to restrict testimony and in prohibiting the introduction of any testimony showing the probable effects of an operation upon the plaintiff."

The principal Texas authorities on this point are Texas Employers Insurance Ass'n v. Kubiak, 276 S.W.2d 909, writ ref. n. r. e., American General Insurance Company v. Quinn, 277 S.W.2d 223, writ ref. n. r. e. and Seelbach, supra, all by the Texarkana Court of Civil Appeals; Continental Casualty Co. v. Swink, 329 S.W.2d 443,[1] Fort Worth Court of Civil Appeals, application for writ pending, and General Accident Fire & Life Assurance Corporation v. Coffman, by the Waco Court of Civil Appeals, 326 S.W.2d 287, writ ref. n. r. e. The Waco Court felt bound, with some reluctance it seems, to follow the Kubiak and Quinn cases in view of the n. r. e. which they drew. We would have concluded similarly if the n. r. e. could, upon examining the records, have been so interpreted. We feel, however, that the granting of the writ in Seelbach frees us from the binding effect, if any, of those decisions. If they do not, as is apparently the case, settle the question for the Supreme Court they should not settle the question for us.

We believe the Texarkana cases are wrong and that the correct, logical and just treatment of the question has been made by the United States Circuit Court of Appeals in National Surety Corporation v. Bellah, 5 Cir., 245 F.2d 936, 937, Judge John R. Brown writing for the court.

In Bellah neither of the parties, the association nor employee, knew the beneficial effect of surgery while the claim was before the Board. Judge Brown in holding

1. Since this opinion was prepared application for writ of error has been ref. n. r. e. In this case the employee was not advised while the matter was before the Board that an operation would be beneficial.

that the court erred in excluding testimony as to the benefits to be expected from surgery had this to say:

"An added, substantial question arises whether art. 8306, Sec. 12e, concerning the procedure for surgical operations shall be obliquely applied, as did the trial court, to keep the admitted truth from the jury. * * *

"Moreover, an extension of this asserted rule [Quinn and Kudiak], produces unrealistic and absurd results which almost ignore, as though it had never come to pass, the miraculous development of modern medical and surgical science. Just what is surgery? Would it include the prick of the hypodermic needle injecting cortisone for relief of arthritis, the piercing of an eardrum or sinus to drain an infected area, the insertion of a needle for a blood transfusion, the introduction of a dye in spinal fluid or internal organs for myelograms, fluroscopes or X-rays, the fixation or immobilization of bony structure by casts, weights or pins?

"And, unless a reputable doctor is to obliterate altogether from his scientific consciousness the knowledge that has come to him from his prolonged study, clinical practice and experience, how can he possibly evaluate disability in terms that do not take into immediate account these marvelous developments to relieve mankind of the toll of suffering and incapacity? By this rule a doctor would be forced to testify that a man lying with a broken leg from a compound fracture is 'legally' forever and totally disabled because the easy and likely successful reduction of the fracture will require slight, but essential, incisions.

"And yet that is the effect of the application of this rule as to this Employee who, by testimony neither true, honest, nor accurate, was portrayed as a hopeless physical wreck though known to all save those to whom the cause was committed for decision was the medical fact that by a safe and accepted surgical procedure, she could be restored to health and capacity. The truth was forgotten. The jury was judging of a fiction. The machinery of the law was pretending to a decision. Neither here nor in a Texas court should or would the quest for truth be blocked by any such judge-made rule."

This language has the master's touch. It is both eloquent and basically sound. We approve it.

The question here is whether or not the fact that appellee knew that surgery would be beneficial while the matter was before the Board is sufficient reason for not following Bellah. We think not.

The injury sustained by appellee was to his back and is described in the record as a "disc protrusion." It was not hernia and is not within the scope of Art. 8306, Sec. 12b, Hernia, V.A.C.S.

The injury sustained by appellee is, however, subject to the provisions of Sec. 12e, Surgical operation, Art. 8306, V.A.C.S. This section provides:

"Sec. 12e. In all cases where liability for compensation exists for an injury sustained by an employee in the course of his employment and a surgical operation for such injury will effect a cure of the employee or will materially and beneficially improve his condition, the association or the employee may demand that a surgical operation be had upon the employee as herein provided, and the association shall provide and pay for all necessary surgical treatment, medicines and hospital services incident to the performance of said operation, provided the same is had. In case either of said parties demands in writing to the board such operation, the board shall immediately order a medical examination of the employee in the same man-

ner as is provided for in the section of this law relating to hernia. If it be shown by the examination, report of facts and opinions of experts, all reduced to writing and filed with the board, that such operation is advisable and will relieve the condition of the injured employee or will materially benefit him, the board shall so state in writing and upon unanimous order of said board in writing, a copy of which shall be delivered to the employee and the association, shall direct the employee at a time and place therein stated to submit himself to an operation for said injury. If the board should find that said operation is not advisable, then the employee shall continue to be compensated for his incapacity under the general provisions of this law. If the board shall unanimously find and so state in writing that said operation is advisable, it shall make its order to that effect, stating the time and place when and where such operation is to be performed, naming the physicians therein who shall perform said operation, and if the employee refuses to submit to such operation, the board may order or direct the association to suspend the whole or any part of his compensation during the time of said period of refusal. The results of such operation, the question as to whether the injured employee shall be required to submit thereto and the benefits and liabilities arising therefrom shall attach, be treated, handled and determined by the board in the same way as is provided in the case of hernia in this law."

It is to be noted that this section gives to both the employee and the association the right to demand an operation under the conditions stated and with the prescribed penalties.

It is also to be noted that this section contains a semi-penalty for the association in that it provides that should the Board find an operation inadvisable, then the employee should continue to be compensated under the general provisions of the law. A positive penalty, however, is prescribed for the employee. If he refuses to submit to an operation after it is recommended by the Board, then the Board may order suspension of his compensation in whole or in part during the period of refusal.

█ Since the rights of the parties are purely statutory, we submit that the penalty provisions of Sec. 12e are all-inclusive and that they should not be supplemented nor lessened.

We are also of the opinion that the cross reference in Sec. 12e to the hernia section (12b) is of no consequence here. We find no penalty provisions in 12b applicable to the association. There are penalties which attach to the employee under 12b if he refuses to submit to an operation which are quite different from those prescribed by Sec. 12e. We are not here concerned with reconciling those differences.

█ Appellee, while his claim was before the Board, being fully aware of the beneficial effects to be expected from surgery should not and we hold he cannot take advantage of his refusal to submit to such remedial surgery by having excluded from evidence testimony directly bearing on the extent and duration of his injury. He cannot be justly heard to complain that the association did not tender him what he had an absolute right to request and what he had every reason to believe would result beneficially to him. To allow such an advantage to be taken would not only be inequitable but it adds to a statute a penalty not prescribed by it. This we have no authority to do.

We will not discuss the hernia cases because of the obvious differences between the relevant portions of Sec. 12b and 12e, supra. The hernia section is mandatory in its language, "the association shall provide competent surgical treatment by radical operation." Neither the association nor the employee has the privilege or option of

requesting surgery for hernia. The law compels it under the conditions stated and a refusal by the employee to submit is severely penalized.

The reason for the statutory distinction between hernia and general injuries is probably unimportant, but it well could be attributed to the ease with which hernia is diagnosed and the routine nature of its treatment.

We believe the Trial Court erred in granting the motion to suppress and in excluding testimony as to the beneficial effects of surgery on appellee.

In view of this holding there are several points which we need not discuss as they will probably not arise on retrial. There are some, however, which do not fall in this class.

■ Complaint is made of the definition of the terms "accidental" and "injury" as used in the court's charge to the jury.

The court charged that by the word "accidental * * * is meant an undesigned, unforeseen and unexpected occurrence or mishap."

Appellant contends that there should have been added the words "which can be traced to a definite time, place and cause." We agree. Barron v. Texas Employer's Ins. Association, Tex.Com.App., 36 S.W.2d 464, approved, Texas Employers' Ins. Association v. McKay, 146 Tex. 569, 210 S.W.2d 147.

■ The Trial Court defined "injury" as

"* * * used in this charge, is meant damage or harm to the physical structure of the body and such disease or infection as naturally result therefrom, or the incitement, *excelleration* or aggravation of any disease or injury previously existing, by reason of such damage or harm to the physical structure of the body."

Appellant objected to this definition on the ground that there was no pleading that any injury was an incitement, acceleration or aggravation of any disease or previously existing injury of appellee and appellant requested the court to define injury as meaning damage or harm to the physical structure of the body and such disease or infections as naturally result therefrom.

The court's definition of injury is proper if warranted by pleadings and evidence. Southern Underwriters v. Parker, 129 S. W.2d 738, Beaumont Court of Civil Appeals, writ ref.

As appellant suggests only that the pleading, not the proof, is deficient, this objection will doubtless be remedied on retrial.

Appellant objected to the submission of this issue:

"Do you find from a preponderance of the evidence that the Plaintiff sustained any total disability following the injury or injuries, if any, previously inquired about?"

Appellant requested the submission of this issue:

"Do you find from a preponderance of the evidence that the Plaintiff sustained any total disability resulting from the injury or injuries, if any, previously inquired about in Special Issue No. 1 or Special Issue No. 2?"

The difference is in the term "following the injury" as used by the court and the term "resulting from" as requested.

■ The word "following" is inept and should not be used as employed in this issue. Its use might result in reversible error. All that we held in City of Austin v. Powell, Tex.Civ.App., 321 S.W.2d 924, was that no harm resulted from its use in the issue there under scrutiny. Appellant's requested special issue was in correct form and should have been submitted. See Industrial Indemnity Exchange v. Ratcliff,

138 S.W.2d 613, Beaumont Court of Civil Appeals, writ dismissed, Federal Underwriters Exchange v. Carroll, 130 S.W.2d 1101, Consolidated Underwriters v. Foxworth, 196 S.W.2d 87, Pacific Indemnity Co. v. Arline, 213 S.W.2d 691, writ dism. by agreement, all by the Beaumont Court of Civil Appeals and Russell v. Great American Indemnity Co., 127 Tex. 458, 94 S.W.2d 409.

On the question of a lump sum payment of compensation, appellee pleaded:

"Plaintiff would further allege and show to the court that his is a meritorious case, one in which manifest hardship will result unless the company be compelled to redeem its liability in a lump sum in that he is unable to work; that he has been compelled to hire doctors and buy medicine to treat his great and serious injuries, and that his compensation paid weekly will not pay for said treatments and take care of his family; that all of said conditions bring about manifest hardship and injustice meriting the paying of his money in a lump sum, and the company should be so compelled to do so, allowing to the Defendant the four per cent interest discount for any lump sum payment."

Appellant contends that neither pleading nor proof is sufficient to support the jury finding of hardship if a lump-sum payment is not made. We disagree.

Appellee testified that he had two boys, twelve and fourteen, who were looked after by his mother-in-law while he and his wife both work; that at the time of the trial he had debts totaling approximately $4,000; that since his injury he sold his pickup truck and deer rifle and had his motor boat up for sale; that his oldest boy recently broke his finger and the medical bills had not yet been paid; and that his father lived with him, was a wheelchair patient whose only income was a little social security, and that other than that he was entirely dependent upon appellee for his support.

The evidence shows that appellee continued to work for the city from July, 1955 to May, 1958 at his previous rate of pay and that from May, 1958 to the time of trial he had been gainfully employed. Upon cross-examination appellee testified that $2,800 of his debts was for a new 1959 DeSoto purchased after he received his injury, and the pickup truck he was forced to sell because of his injuries was purchased in 1957 after he received his injuries.

We believe the pleadings and evidence were sufficient to present a jury question in regard to a lump-sum payment.

The judgment of the Trial Court is reversed and this cause is remanded for a new trial.

Reversed and remanded.