Thomas Buford GILL, Appellant,

v.

**TRANSAMERICA INSURANCE COMPANY,**
Appellee.

No. 16927.

Court of Civil Appeals of Texas.

Dallas.

June 23, 1967.

Rehearing Denied July 28, 1967.

Otto B. Mullinax, of Mullinax, Wells, Mauzy, Levy & Richards, Dallas, for appellant.

Wm. N. Hamilton, of Akin, Vial, Hamilton, Koch & Tubb, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

This is a workmen's compensation case. Alleging that he had sustained an accidental personal injury on January 15, 1965 while engaged within the course of his employ-

ment for Henry C. Beck Company in Dallas, Texas, appellant brought this action against his employer's insurer, Transamerica Insurance Company seeking to recover statutory benefits for the disability occasioned thereby. Appellant alleged, inter alia, that "any weakness, impairment, disease or infection of any kind," which he may have had prior to the receipt of his injury was dormant and that such injury "contributed to, aggravated and accelerated such pre-existing condition."

Appellee insurance company, by way of defense, affirmatively alleged that any disability or loss of wage-earning capacity sustained by appellant was caused solely by "natural conditions, diseases, prior compensable injuries," etc. Appellee enumerated such pre-existing conditions to be "a congenital anomaly of the spine"; "a condition known as spondylolisthesis"; "an unknown condition covering a medical classification as 4–F for military service"; and "an undetermined condition of the spine requiring medical treatment since 1962."

Following the presentation of voluminous testimony to a jury a special issue verdict was returned in which it was found that appellant had sustained an accidental personal injury on January 15, 1965 while in the course of his employment for Henry C. Beck Company; that he had sustained total incapacity following such injury, such incapacity beginning on February 22, 1965 and ending on March 4, 1965; that appellant did not sustain any partial incapacity following the injury; that appellee insurance company had failed and neglected to furnish proper medical aid for the treatment of the injuries and that the reasonable cost of such medical treatment was $640.95; that the prior injury sustained by appellant in 1962 did not contribute to the incapacity he had following the injury of 1965; that appellant's incapacity was not caused solely by one or any combination of the prior injury of 1962 or "a condition known as spondylolysis."

Based upon such verdict the trial court rendered judgment for appellant against appellee for the sum of $58.12 as compensation and the additional sum of $640.95 representing doctor and hospital bills. Appellant, contending that the judgment is wholly inadequate, brings this appeal.

Through the medium of his first four points appellant contends that his rights were prejudicially affected by the failure and refusal of the trial court to heed his objections leveled at the court's definition of the term "injury" as contained in the main charge to the jury, and in refusing to submit his requested definition of the term "injury" which incorporated therein the element of aggravation of a pre-existing "condition". He further contends that the court erred to his prejudice in denying his motion to further instruct the jury and to enlarge upon the definition of the term "injury" to include the element of aggravation of "all bodily infirmities" following a written request from the jury to be given a more complete definition of the word "injury".

A proper evaluation of appellant's complaints requires a brief statement. Appellant Gill, 52 years of age, had been employed as an operating engineer for 26 years. He had never sustained an injury to himself prior to 1962 when he sustained an injury to his back. As a result of the 1962 injury he was seen by Dr. Patterson and Dr. Driggs. These doctors differed somewhat in their diagnosis. Dr. Patterson, a neurosurgeon, testified that x-ray and myelogram studies demonstrated a condition known as "spondylolysis" and that the patient had been born with this condition in his back. Dr. Driggs, an orthopedic surgeon, testified that his examination revealed a "spondylolisthesis". The testimony reveals that the difference between spondylolysis and spondylolisthesis is that in the latter case there is a degree of forward slipping of the fifth lumbar vertebra on the sacrum. Dr. Driggs testified that the condition he described was congenital, that is, present

from birth, and that the injury of 1962 aggravated such pre-existing condition. He said that the man had an unstable back due to such physical impairment.

As a result of the 1962 injury Mr. Gill lost no work time except four days in the hospital. Following the injury in December 1962 until he was injured in January 1965 he had no trouble with his back. During the year preceding January 15, 1965 he worked 227 days for three different companies, and put in considerable overtime. Following his 1965 injury which involved a strain to his back he was seen by Dr. Herrick, an orthopedic specialist, who found muscle spasm in his low back together with numbness of the right thigh. He testified that his x-ray examination revealed the defect in the low back without forward slipping. Dr. Herrick concluded that appellant's problem was secondary to his congenital defect of the spine, superimposed on the strain received while working. He recommended an operation and such operation was performed on March 5, 1965, which consisted of a spinal fusion which had the effect of permanently stiffening the backbone over three vertebrae. Dr. Herrick testified that the history of having hurt himself some six weeks before while trying to climb down from the top of a building would be calculated to aggravate the defect or condition that he had from birth. The doctor testified that his estimate of disability following the operation would be around 15 per cent.

There was no conflict in the testimony that appellant had a pre-existing congenital condition in the lower part of his spine and that such condition could have been aggravated or accelerated by a strain such as that occasioned by him on January 15, 1965.

The trial court defined the term "injury" in his charge as follows:

" 'INJURY' means damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom, or the incitement, acceleration or aggravation of any disease previously or subsequently existing by reason of such damage or harm to the physical structure of the body."

Appellant leveled a timely objection in which he directed the court's attention to the fact that the definition should incorporate the word or words which would give the jury the opportunity of considering aggravation of a pre-existing body condition as well as a pre-existing disease. In addition to the objection to the charge appellant tendered a requested explanatory instruction which included the element of "excitement, acceleration or aggravation of any disease or condition of the body previously or subsequently existing by reason of such injury to the body." This requested instruction was refused and the court declined to change the definition given.

After the jury had deliberated for some time it forwarded to the court a note as follows:

"Your Honor

"Can we have a more complete definition of the word *Injury*. Thanks. David L. Smith, Foreman."

The court responded, in writing, as follows:

"LADIES AND GENTLEMEN OF THE JURY:

"The definition of injury in the charge is the legal definition. The Court can give you no further definition than that contained in the charge.

"Paul G. Peurifoy, Judge."

Appellant filed written objections to the instruction of the court to the jury advising them that the definition contained in the charge is the law and that the court cannot enlarge upon it, and also moved the court to give to the jury an additional definition of the word "injury" including the element of "the incitement, acceleration, or aggra-

vation of any disease, infirmity, or condition of the body previously or subsequently existing by reason of such damage or harm to the physical structure of the body."

The court refused such additional instruction.

Having carefully considered this record we are of the opinion, and so hold, that the trial court erred in failing to heed the objections and requests timely and properly made by appellant. We are also convinced that the appellant has maintained his burden of showing that the error of the court reasonably led to the rendition of an improper verdict in this case. Rule 434, Texas Rules of Civil Procedure.

■ The Workmen's Compensation Act, referred to by some as social legislation, was purposely designed to compensate an employee for incapacity flowing from an accidental personal injury sustained within the scope of his employment. One of the fundamental precepts of this law is that the liability arising thereunder cannot be defeated by showing that the injured employee was not a well person at the time of the injury. The employer accepts the employee as he is when he enters the employment, and it is no defense to a claim for compensation that the injury would not have been as great if the employee had been in a healthy or more perfect physical condition. Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356 (1937); Southern Underwriters v. Parker, 129 S.W.2d 738 (Tex.Civ.App., Beaumont 1939); Texas Employers' Ins. Ass'n v. Parr, 30 S.W.2d 305 (Tex.Comm'n App., 1930); Liberty Mutual Ins. Co. v. Murphy, 205 S.W.2d 398 (Tex.Civ.App., Fort Worth 1947).

■ Not only may an injured employee recover the statutory benefits flowing from the injury itself but in the event such injury aggravates or accelerates the effect of pre-existing disease or bodily infirmity that renders him more susceptible to such an injury he may not be denied recovery for such incapacity. Texas Indemnity Ins. Co. v. Staggs, 134 Tex. 318, 134 S.W.2d 1026 (1940); Texas Employers' Ins. Ass'n v. Parr, supra; Texas Employers' Ins. Ass'n v. Watkins, 135 S.W.2d 296 (Tex.Civ.App., Fort Worth 1939); Zellerbach v. Associated Employers Lloyds, 200 S.W.2d 653 (Tex Civ.App., Galveston 1947); Garcia v. Texas Indemnity Ins. Co., 146 Tex. 413, 209 S.W.2d 333 (1948); Southern Underwriters v. Boswell, 138 Tex. 255, 158 S.W.2d 280 (1942); Sowell v. Travelers Ins. Co., 363 S.W.2d 350 (Tex.Civ.App., Beaumont 1962); 62 Tex.Jur.2d, § 109, pp. 684–685 and cases therein collated.

Art. 8306, § 20, Vernon's Ann.Civ.St., sets forth the statutory definition of "injury" which is ordinarily given to the jury. However, in view of the unbroken line of authorities authorizing recovery for aggravation or acceleration of pre-existing diseases or conditions the courts have uniformly held that in such cases the definition of "injury" is not limited to the statutory language. Thus it has been repeatedly asserted that where the pleadings and evidence present the question of aggravation or acceleration of pre-existing disease or bodily conditions the trial court may, in addition to the use of the statutory language of the definition of "injury" add thereto such phrases as "[t]his damage or harm to the physical structure of the body may include incitement, acceleration, or aggravation of any disease or condition previously or subsequently existing." McCartney v. Aetna Casualty & Surety Co., 362 S.W.2d 838 (Tex.Sup.1962); Southern Underwriters v. Boswell, supra; Maston v. Texas Employers' Ins. Ass'n, 160 Tex. 439, 331 S.W.2d 907 (1960); City of Austin v. Cook, 333 S.W.2d 398 (Tex.Civ.App., Austin 1960), reversed on other grounds, Cook v. City of Austin, 161 Tex. 294, 340 S.W.2d 482 (Tex.Sup.1960); Travelers Ins. Co. v. Vargas, 399 S.W.2d 173 (Tex.Civ.App., Eastland 1966, writ ref'd n. r. e.); 63 Tex.Jur.2d, § 488, pp. 581–582.

■ The principle of recovery for aggravation or acceleration is not limited to

pre-existing diseases, as such are generally known and accepted by the ordinary layman. It also encompasses the idea of acceleration or aggravation of pre-existing natural causes of bodily infirmities or conditions. Various decisions refer to such pre-existing physical conditions as "bodily infirmity", United States Fidelity & Guaranty Co. v. Herzik, 359 S.W.2d 914 (Tex.Civ.App., Houston 1962, writ ref'd n. r. e.); "pre-existing idiopathic condition", Garcia v. Texas Indemnity Ins. Co., 146 Tex. 413, 209 S.W.2d 333 (1948); "predisposing bodily infirmity", Traders & General Ins. Co. v. Rooth, 268 S.W.2d 539 (Tex.Civ. App., Waco 1954, writ ref'd n. r. e.); "pre-existing condition", Sisk v. Glens Falls Indemnity Co., 310 S.W.2d 118 (Tex.Civ. App., Houston 1958, writ ref'd n. r. e.), 66 A.L.R.2d 1; "heart condition", Hartford Accident & Indemnity Co. v. Gant, 346 S.W.2d 359 (Tex.Civ.App., Dallas 1961).

In Southern Underwriters v. Boswell, 138 Tex. 255, 158 S.W.2d 280 (1942), the injured employee was suffering from a pre-existing condition known as arthritis. The trial court, in addition to the statutory definition of "injury" instructed the jury that they may consider "the extent of the aggravation, if any, of any pre-existing diseases or bodily defects existing at the time of such injury, if any." The Supreme Court approved such instruction. It is important to note that the court drew a distinction between "pre-existing disease" and "bodily defects".

■ So, it is quite obvious that in this case the trial court recognized the judicial enlargement of the statutory definition of "injury" and attempted to do so but in so doing it limited the theory of aggravation to that of pre-existing disease whereas the pleadings and the evidence clearly raise the issue of a pre-existing bodily infirmity or a congenital condition existing from birth. It is quite obvious that the ordinary layman when confronted with the term "disease" would associate such with a condition caused by bacteria, infection or virus. It is entirely probable that this ordinary conception of "disease" would not carry through or be naturally associated with a birth defect of the spine. This fact made it imperative that the trial court further enlarge upon the definition and include the element of aggravation as was done in many of the illustrated cases cited above.

That this did actually lead to confusion in the minds of the jury in this case is reflected by their act in sending the court a written communication in which they requested an enlargement of the definition of "injury". We think the trial court should have honored appellant's request to give more guidance to the jury as was authorized by law.

When we review the entire charge of the court, and all of the special issues submitted, the error becomes more apparent. Whereas the court, in his definition of "injury" limited the jury to acceleration or aggravation of any "disease previously or subsequently existing", such term to be considered by the jury in answering the basic issues essential to appellant's recovery, the court, in submitting the defensive issue, No. 18 expressly pinpointed for the jury's consideration "a condition known as spondylolysis." Thus it is entirely probable that the jury was caused to believe that in considering appellant's basic issues they were confined to acceleration or aggravation of a prior "disease" whereas in their consideration of the defensive issue of "sole cause" they might consider the specific thing which existed in appellant's body and upon which there was voluminous evidence of acceleration or aggravation.

Appellant's points 1 through 4 are sustained.

Appellant's remaining points complain of matters such as reference by appellee's counsel to a prior settlement of a claim and also the sufficiency of the evidence to support certain of the jury's answers. These matters need not be discussed in view of our disposition of appellant's first four

points which results in another trial of the case.

The judgment of the trial court is reversed and remanded.

Reversed and remanded.