**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Floyd V. ROGERS, Appellee.**

**No. 7256.**

Court of Civil Appeals of Texas.

Amarillo.

April 22, 1963.

Rehearing Denied May 20, 1963.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellant.

Merchant, Fitzjarrald, Poole & Merchant, Amarillo, for appellee.

DENTON, Chief Justice.

This is a workmen's compensation case. Appellee, Floyd V. Rogers, sued Texas Employers' Insurance Association for total and permanent disability as a result of an injury sustained on or about December 1, 1960, while in the course of his employment for the M. W. Kellogg Company. The jury found all issues in favor of appellee, and the trial court entered judgment for appellee for total and permanent injuries payable in a lump sum.

In December of 1960 Rogers was employed as a pipe fitter by the Kellogg Company in the construction of a catalyst unit at an oil refinery. Rogers, a sixty year old man, was working on a large tank some sixty to eighty feet above the ground when

he slipped on the walkway around the tank. He fell some seven feet and struck his side and rib section against a pipe rail. The injury caused severe pain and affected his breathing. After being sent to the company doctor for treatment, he remained on the job until the Friday before Christmas, but during this time he performed no heavy work. Rogers drove to Oklahoma City for the holidays, and just prior to returning home on December 26 the pain increased. He was then admitted to the Norman Municipal Hospital. Dr. Dycus, who had treated Rogers on prior occasions, was the treating doctor throughout his three weeks stay in the hospital. On December 27 Rogers suffered a heart attack. It is the latter injury which appellee contends is the total and permanent disability injury for which he seeks recovery. The primary question is whether the rib injury of December 1, 1960, was the producing cause of the heart attack.

■ By points of error one through four appellant raises "no evidence" questions. These points of error allege errors of the trial court in failing to set aside the jury's finding; failing to grant appellant's motion for directed verdict and its motion for judgment non obstante veredicto; and that certain alleged hearsay testimony could not form the basis of the judgment entered. In considering these points we are required to review the evidence in support of the findings and consider only the evidence and the inferences which support the findings, and reject the evidence and the inferences to the contrary. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

Rogers' rib injury of December 1 was confirmed by a fellow employee and the foreman on the job. Dr. Barksdale treated him twice in Borger for this injury prior to the Oklahoma trip. The pain continued to be severe, and his breathing was made difficult. When the pain became more severe on December 26, Rogers' son took him to the hospital. He was then admitted and examined by Dr. Dycus. Dr. Dycus, who testified by deposition, was the only medical witness offered by either party. He testified:

> "Of course, I was primarily concerned, since it was on the left side of his chest, of the possibility of heart pain, but the pain turned out to be a superficial pain, due to rib injury, in relation to respiration. It was made much worse by breathing, and this is typical of a fracture of the rib."

He testified Rogers could hardly breathe because of this pain. His heart was checked with a stethoscope, and his blood pressure was taken. These examinations revealed no abnormalities. According to this record Rogers had had no prior history of heart trouble. He was given medication for pain, and as the hypo would wear off he became very restless, and would "thrash" about in bed. The doctor further testified:

> "In the early a. m., I think it was around 3 a. m. the next morning, he suddenly had severe substernal pain and became shock-like, and had a massive myocardial infarction."

"Substernal" pain was defined by the doctor as "a pain caused by injury to heart or blood vessels." The doctor was asked the following question:

> "Q. Doctor, what, if anything, do you attribute the heart attack which he had on December 26?

> "A. This man was as uncomfortable as anybody I have ever seen from his rib injury, and rib injuries are notorious for not only causing pain, but by causing so much pain in relationship to breathing that the person breathes improperly. He breathes off the top of his lungs, so to speak, so that the oxygen supply being compromised, together with the strain that comes from that much pain, I think, was a direct precipitating incident or precipitating factor in his heart attack."

24

On cross-examination the doctor testified that after the heart attack Rogers suffered from angina pectoris which was described as pain from insufficient blood supply to the heart. He also testified that it was "possible" that Rogers could have suffered the heart attack without having sustained the prior rib injury; and that it was "possible" the pain Rogers suffered at the time the doctor first saw him was caused by the myocardial infarction. However, the doctor did not change his opinion as to the cause of the heart attack. As previously noted, the insurance carrier offered no medical testimony.

■ By brief appellant takes the position that the above quoted testimony of Dr. Dycus might be sufficient to support the verdict, but argues other testimony renders such testimony hearsay and thus not admissible. A transaminase test, an electro cardiogram, and x-rays were taken of Rogers, but the doctor admitted he did not personally conduct such tests. He testified they were taken by the hospital staff. Neither did he testify that the tests were made under his personal supervision and direction. Even though the doctor testified his opinions were based "in part" on these clinical tests, the record does not reveal the positive opinions quoted above were formed from such reports. As the admitting doctor who actually treated the patient, Dr. Dycus personally made sufficient tests and examinations to qualify himself to make these statements independently of the clinical tests. It has been held that a doctor's diagnosis which is based in part on unsworn reports of tests made by hospital technicians is admissible. Sundquist v. Madison Rys. Co., 197 Wis. 83, 221 N.W. 392. This holding conforms to the general rule that where it appears a witness' testimony is predicated both upon personal knowledge and upon hearsay, his testimony is admissible. Norris v. Lancaster (Tex. Comm.App.), 280 S.W. 574. Schooler v. State (Civ.App.), 175 S.W.2d 664 (Refused, Want of Merit). We are of the

opinion and so hold the testimony of Dr. Dycus was admissible.

■ When the evidence together with its inferences is considered in a light most favorable to the verdict, we conclude there was sufficient evidence to warrant the submission of the material issues to the jury. The painful injury sustained by Rogers on or about December 1, 1960, is not controverted. Extreme pain and difficult breathing are usual results of such an injury. There is positive evidence Rogers had never suffered a heart attack prior to the one in question. In our opinion Dr. Dycus' testimony was sufficient to support the causal connection between the pain and physical strain caused by the rib injury with the heart damage. Hartford Accident & Indemnity Co. v. Gant (Civ.App.), 346 S.W.2d 359. Texas Employers' Ins. Ass'n. v. Talmadge (Civ.App.), 256 S.W.2d 945. We therefore conclude there was evidence of probative force to support the jury verdict. Appellant's points of error one through four are accordingly overruled.

■ By its next point of error appellant complains there is no evidence, and in the alternative insufficient evidence, that Rogers had worked the required number of days in the preceding year to warrant use of his own wages as a basis for determining his average weekly wage. It is uncontradicted that Rogers worked a total of 271 days in the year preceeding his injury. He was a pipe fitter by trade, and testified he worked for the Kellogg Company 91 days and the balance of 180 days for Reynolds Oil Field Sales in Oklahoma City. The record shows he earned $3,072.45 from Kellogg and $3,280.83 from Reynolds. Despite Rogers' testimony that he worked as pipe fitter for both concerns, and the work performed on each job was similar appellant argues this testimony is contradictory to the conclusion the two jobs were the same. This contention is based on the premise that his earnings were so vastly different, the nature of the employment must be different. This conclusion does

not necessarily follow. No case has been cited and we have found none which holds the similarity of employment under the workmen's compensation act is based on the salary scale paid. We conclude there was evidence to support the jury finding that Rogers worked in the employment at least 210 days the year immediately preceding his injury.

■ Appellant objected that the charge did not make direct inquiry whether Rogers' rib injury was the producing cause of the heart attack. It requested an issue in support of this objection. An objection and requested issue were also refused which sought to obtain a jury finding with respect to the degree and duration of Rogers' incapacity if the effects of the heart attack were excluded from consideration. The first special issue asks if Rogers "sustained an accidental injury to his body on or about December 1, 1960." In connection with this issue, the court instructed the jury:

> "By the term 'ACCIDENTAL INJURY', as used in this charge, it is meant an undesigned, unforeseen, or unexpected occurrence or mishap, which can be traced to a definite time, place and cause, and causing damage or harm to the physical structure of the body and such diseases or infections as naturally result therefrom, or the incitement, acceleration or aggravation of any disease previously or subsequently existing by reason of such damage or harm to the physical structure of the body."

Special issue number two inquired if Rogers "sustained any incapacity to labor as the natural result of the injury, if any, sustained by him on or about December 1, 1960." Special issue number three asks if "such accidental injury, if any, resulted in plaintiff becoming totally incapacitated for work."

The issues as submitted fully comply with the holding of the Supreme Court in Southern Underwriters v. Boswell, 138 Tex. 255, 158 S.W.2d 280. See also Maston v. Texas Employers' Ins. Ass'n, 160 Tex. 439, 331 S.W.2d 907. Special issue number one in this case and the issue submitted in the Maston case and the issue suggested in the Boswell case are practically identical. The issue as framed was specifically approved in those two cases. The definition of "accidental injury" included the phrase "causing damage or harm to the physical structure of the body and such diseases or infection as *naturally result therefrom.*" (Emphasis added.) When the approved special issue is considered together with the court's instruction, we conclude the trial court did not err in submitting the issue in that form and in refusing the requested special issue.

■ We find no merit in the contention the jury should have been required to determine the extent and duration of Rogers' incapacity with the effects of the heart attack eliminated from consideration. There was no necessity for the jury to find either separately or collectively that Rogers suffered one or all of the exact injuries alleged in the petition and which were supported by the evidence. Southern Underwriters v. Boswell, supra.

■ The judgment allowed recovery for 401 weeks of compensation at the maximum rate of $35.00 per week. The date of the initial rib injury was on or about December 1, 1960, and the jury found Rogers' total incapacity commenced December 27, 1960. Under the workmen's compensation act the compensation period of 401 weeks must be calculated from the date of the injury. Tex. Employers Ins. Ass'n v. Guidry, 128 Tex. 433, 99 S.W.2d 900. Jones v. Texas Employers Ins. Ass'n, 128 Tex. 437, 99 S.W.2d 903. In the instant case the incapacity did not begin until December 27, 1960—some four weeks after the rib injury. It follows that Rogers is entitled to recover compensation for the period beginning December 27 and to terminate at the end of 401 weeks from December 1, 1960. The judgment should therefore be reformed so as to reduce the total

period of recovery by four weeks. The judgment of the trial court is, therefore, reformed to allow Rogers recovery for 397 weeks of compensation at the rate of $35.00 per week.

The judgment of the trial court is therefore reformed as stated above, and as reformed the judgment is affirmed.

Reformed and affirmed.