WESTERN ALLIANCE INSURANCE COMPANY, Appellant,

v.

Julia Shay JECKER, Appellee.

No. 5516.

Court of Civil Appeals of Texas. El Paso.

Oct. 23, 1963.

Rehearing Denied Nov. 13, 1963.

Guittard & Henderson, Harry F. Maddin, Victoria, for appellant.

Keys, Russell, Keys & Watson, Corpus Christi, Huson & Bissett, Refugio, for appellee.

CLAYTON, Justice.

The original opinion of this court in the above-styled and numbered cause handed down on the 10th day of October, 1962 (362 S.W.2d 137) has been, on instructions of the Supreme Court of Texas (369 S.W. 2d 776) reviewed and further considered, and the following opinion is hereby rendered to supersede the original opinion rendered herein.

## OPINION

This is an appeal from a judgment of the District Court of Refugio County, Texas in which appellee was awarded benefits under the Workmen's Compensation Act against appellant, an insurance carrier, for the death of her husband, Lawrence K. Jecker, who succumbed from injuries received in an automobile collision which occurred on September 16, 1958. Appeal was originally perfected to the Court of Civil Appeals for the Fourth Supreme Judicial District at San Antonio and was transferred to the Eighth Judicial District at El Paso by order of the Supreme Court of Texas for the purpose of equalizing the docket.

Trial in the district court was to a jury. Certain matters having been stipulated, the trial judge confined his charge to three special issues. In answer to Special Issue No. 1, the jury found that at the time of the fatal accident the deceased was in the course of his employment with Bay Chevrolet, Incorporated, an automobile and appliance business of Palacios, Texas. In answer to Special Issue No. 2 the jury found that the plaintiff would suffer manifest hardship and injury if the compensation awarded, if any, were not paid in a lump sum, and the jury further found, in answer to Special Issue No. 3, that the deceased was not "in a state of intoxication" at the time of the accident. This last-mentioned special issue was deemed by the trial court to be necessary, under the evidence, by virtue of the provision of the Texas Workmen's Compensation Law, Article 8309, Vernon's Ann.Tex.Civ.St., section 1: "The term 'injury sustained in the course of employment,' as used in this Act, shall not include * * * (3) [a]n injury received while in a state of intoxication."

After denying a motion for judgment non obstante veredicto, the trial court entered judgment for plaintiff on the verdict, from which judgment this appeal is taken.

Appellant's Points of Error Nos. Two and Three are directed at the jury's finding, in answer to Special Issue No. 1, that deceased was in the course of his employment at the time of the fatal accident, asserting that there was no evidence to support such finding and that the same was so contrary to the overwhelming preponderance of the evidence as to be manifestly unjust and unfair.

Since these two points of error relate to the jury's finding on Special Issue No. 1, they will be discussed first.

Inasmuch as Jecker suffered his fatal injuries while traveling on a public highway, whether he was in the course of his employment at the time is measured and limited by sections 1 and 1b of Art. 8309, V.A. T.C.S. Section 1, after eliminating injuries caused under certain circumstances, provides that the term "injury sustained in the course of employment" shall "include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." Section 1b, added in 1957, reads:

"Unless transportation is furnished as a part of the contract of employment or is paid for by the employer, or unless the means of such transportation are under the control of the employer, or unless the employee is directed in his employment to proceed from one place to another place, such transportation shall not be the basis for a claim that an injury occurring during the course of such transportation is sus-

tained in the course of employment. Travel by an employee in the furtherance of the affairs or business of his employer shall not be the basis for a claim that an injury occurring during the course of such travel is sustained in the course of employment, if said travel is also in furtherance of personal or private affairs of the employee, unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip."

Special Issue No. 1 inquired whether Jecker was in the course of his employment at the time of his fatal accident. In connection with the special issue, the court gave an instruction defining "in the course of his employment" in the language of sections 1 and 1b of Article 8309 as that language relates to the facts in the case. The jury was instructed that "in the course of his employment" meant "originating in the work, business, trade or profession of Bay Chevrolet, Incorporated, and in the furtherance of its affairs or business." The instruction then continued as follows:

"However, an employee, while travelling on the highway in an automobile, is not considered as being in the course of his employment unless the transportation is paid for by the employer or unless the employee is directed in his employment to proceed from one place to another place."

Finally, the instruction advised the jury that travel in furtherance of the business of the employer could not be the basis of a claim that the death occurred in the course of employment if the travel was also in furtherance of personal or private affairs, unless the trip would have been made had there been no personal or private affairs to be furthered and unless the trip

would not have been made had there been no business of the employer to be furthered.

Before the amendment in 1957 of Article 8309, V.A.T.C.S., the Supreme Court of Texas in an opinion written by the now Chief Justice, in the case of American General Insurance Company v. Coleman, 303 S.W.2d 370, sets out the following:

"The general rule is well settled that an injury incurred in the use of public streets or highways in going to and returning from the place of employment is not a compensable injury because not incurred in the course of the employment as required by Article 8309, Vernon's Annotated Texas Statutes. (Citing cases). There are exceptions to the rule. An injury incurred in going to or returning from work is held to be in the course of a workman's employment where the means of transportation is furnished by the employer. (Citing cases). So, also, where the employer pays another to transport the injured employee. Texas Employers' Ins. Ass'n. v. Inge, 146 Tex. 347, 208 S.W.2d 867. An injury is held to be in the course of a workman's employment if in going to or returning from his place of employment or his place of residence he undertakes a special mission at the direction of his employer, or performs a service in furtherance of his employer's business with the express or implied approval of his employer. (Citing cases). This exception to the general rule is well stated in the opinion of the Court in the case last cited, where it is said: 'In Texas it is held that an accidental injury resulting from the hazards of the public streets is compensable if the employee at the time of the injury is actually engaged in the performance of a duty required by his contract of employment, or is engaged upon some mission incidental to his employment, of substantial benefit to, and with the express or implied approval of, his em-

ployer.' [Associated Indemnity Corp. v. Bush, 5 Cir.] 201 F.2d [843] 844." See also: St. Paul Mercury Ins. Co. v. Dorman, 341 S.W.2d 480 (Civ.App., 1960, ref'd, n. r. e.).

■ The general rule appears to be even broader than that applied under the circumstances of the Coleman case. It is that injuries incurred by a workman while traveling on public streets and highways are not incurred in the course of employment. But there are exceptions to that rule. One of the exceptions is when injury occurs while the workman is traveling on the public streets or highways pursuant to express or implied requirements of his employment contract. Smith v. Texas Employers' Ins. Assn., 129 Tex. 573, 105 S.W.2d 192; Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238; Jones v. Texas Indemnity Co. (Tex.Civ.App.), 223 S.W.2d 286 (wr.ref'd.); Federal Underwriters Exchange v. Lehers, 132 Tex. 140, 120 S.W.2d 791.

This exception was recognized in the Coleman case by a quotation from Associated Indemnity Co. v. Bush, 5th Cir., 201 F.2d 843. The rationale of it is that since the workman's employment requires him to subject himself to the risks and hazards of streets and highways, his injuries grow out of his employment. Smith v. Texas Employers' Ins. Assn., supra. The exception was well established before the adoption of section 1b of Article 8309 by the Legislature, and it must be assumed that the section was enacted with full knowledge of it.

■ Was the exception abolished by Section 1b of Article 8309? We think not. It has been recently recognized in Texas General Indemnity Co. v. Bottom, Tex.Sup., 365 S.W.2d 350, 353, that the Legislature intended by the enactment of section 1b "to circumscribe the probative effect that might be given to the means of transportation or the purpose of the journey rather than to enlarge the definition (of "injury sustained in the course of employment") found in Section 1." But the Legislature surely did not intend to provide that an employee whose employment requires him to travel at his own expense in his own automobile on streets and highways, either constantly or intermittently, should be denied compensation if accidentally injured while thus exposed to risks growing out of his employment. Any such holding would be wholly unjust to salesmen, servicemen, repairmen, deliverymen, and a host of others who may be required to use their own automobiles in their work, and would be a strict rather than a liberal interpretation of the Workmen's Compensation Act.

■ It is to be noted that one of the exceptions to the provision in section 1b that "transporation shall not be the basis for a claim that an injury occurring during the course of such transportation is sustained in the course of employment" is when "the employee is directed in his employment to proceed from one place to another." We construe this exception to include those situations in which the employee proceeds from one place to another under the terms of an employment which expressly or impliedly requires that he do so to discharge the duties of his employment. Having thus construed the statute, we give the same meaning to that part of the trial court's instruction which advised the jury that "an employee, while travelling on the highway in an automobile, is not considered as being in the course of his employment * * * unless the employee is directed in his employment to proceed from one place to another place."

■ Our determination of whether there is in the record evidence of probative force that Jecker was in the course of his employment at the time of his fatal accident is made under governing law as announced above. There is evidence that he was in the course of his employment if there is evidence that (1) he was traveling on the highway pursuant to express or implied provisions of his employment contract that he do so in performance of his duties, and (2) that he would have made the trip

had there been no personal or private affairs to be furthered and would not have made it had there been no business of his employer to be furthered.

Bay Chevrolet, Inc., is a family-owned corporation with Charles Luther, owner of ninety per cent of its stock, as president and manager. It operates an automobile business and an electrical appliance business, about four blocks apart, in Palacios. It has a General Motors' franchise for electrical appliances, including Frigidaire ranges.

Jecker had been in the employ of Bay Chevrolet for about eleven months at the time of his death. He was in charge of sales, delivery and servicing of appliances, was paid a salary of $200.00 per month, plus a commission or bonus, and, with the aid of Luther's sister who performed office duties, operated the appliance business under loose supervision of Luther. He worked six days a week. His regular hours were from eight to five, but the arrangement of his work schedule was left largely to him. No mileage limitation was put on the area in which he could sell appliances by either general instructions or the franchise, but his normal trade area was within a radius of twenty miles of Palacios, and he understood that. He once delivered and installed a washing machine, at Luther's request, in the apartment of Luther's son in Austin, a distance of approximately one hundred and sixty miles.

In March of 1958, Jecker, with Luther's permission and approval, sold a Frigidaire range to Wallace Shay, Mrs. Jecker's nephew. Shay lived in Refugio, some eighty miles distant from Palacios. Jecker delivered and installed the range, making the trip in a company truck. The range was new. Under Frigidaire's written warranty, the manufacturer agrees that for one year it "will, at its election, repair or replace without cost to the owner or user, through an authorized servicing dealer or f. o. b. the factory, any part found by the Manufacturer to be defective * * * "

On Tuesday, September 16, 1958, Jecker went to Refugio to the home of Wallace Shay where he, with the aid of Shay, replaced a broken glass control panel and a surface burner of Shay's range with new parts purchased and furnished by Bay Chevrolet, Inc. While traveling on a public highway on his return trip to Palacios, his automobile collided with another automobile at about 7:30 p. m. and he suffered injuries from which he died.

The facts detailed to this point may be accepted as undisputed. Western Alliance's assertion that Jecker was not injured in the course of his employment rests on testimony of Charles Luther. Luther testified that while the range was sold by Jecker to Shay with his knowledge and consent, it was sold at a reduced price and with the understanding between him and Jecker that Bay Chevrolet would replace any defective parts but would not pay installation or servicing charges; that Bay Chevrolet had replaced a broken glass panel on the range in June but had done so as a matter of company policy and not under or by virtue of a warranty; that he was aware that Shay had communicated with Jecker at a later date with respect to replacing a broken glass control panel and a surface unit switch, and the company ordered replacement parts; that the parts were received on Tuesday, September 9, and Jecker told him that he would be happy to go to Refugio and install the parts on his own time; that Jecker had planned to go on Sunday, September 14th, but told him later (probably on Monday, 15th) that he did not go on Sunday, but wanted to go to attend to some personal business and would take the new parts for the range with him and replace the broken or defective parts on a day off; that he said, "Okay, go ahead"; that he knew Jecker was going to make the trip to Refugio, but he did not know on what day he was going and did not authorize him to go on company time to replace the broken or defective parts of the range.

Luther's testimony thus far detailed indicates that Jecker's trip to Refugio was not

made for the purpose of performing duties imposed on him by express or implied terms of his employment. But there is other evidence in the record tending to prove that it was.

Luther testified that "it was Mr. Jecker's job to service any appliances that was (sic) sold through Bay Chevrolet Co.," and further as follows:

"Any new merchandise you sell you have to service it for one year or you have to pay into Frigidaire Division an amount agreed upon and suggested by Frigidaire Division in order to cover normal service within warranty. If you sold an item at retail that was considered to be covered by service, then you would naturally have to service it even if you sold it in Alaska or you would have to make arrangement with Frigidaire Division to have it serviced by a dealer closer to the place of the user."

He testified positively that the range sold to Shay was new and carried a one-year warranty.

There is other evidence that the range was sold with full warranty and that Luther recognized that Bay Chevrolet was obligated to replace defective parts and to furnish necessary labor or service. Shay testified that when the range was delivered, he was given a booklet containing the written warranty. The glass panel was broken when the stove was first installed or shortly thereafter, and Jecker, with knowledge and approval of Luther, made a trip to Refugio in June to install a new one furnished without charge by Bay Chevrolet. Bay Chevrolet paid the gasoline expense of the trip. Work orders were prepared by Bay Chevrolet for replacement of the glass panel in June and for the work done on September 16th. On the back of the work order for September 16th is a notation of items charged out to the particular job as white lacquer, switch, surface unit, and glass control panel, and their cost to Bay Chevrolet; no charge is shown for labor.

In the space for billing in the work orders for both the June and September work appears the word "warranty".

■■ The evidence and the reasonable inferences therefrom must be viewed most favorably in support of the jury's finding under Special Issue No. 1 that at the time of the fatal accident the deceased was in the course of his employment. Under the rule above stated, we are satisfied that there is in the record evidence of probative force that Jecker's trip to Refugio on the date of his fatal accident was in the furtherance of his employer's business and in the performance of duties imposed by his contract of employment. We are further satisfied that there is evidence of probative force that he would have made the trip had there been no personal or private affairs to be furthered and would not have made it had there been no business of his employer to be furthered.

The jury was not required to believe Luther's testimony that Jecker had agreed that the manufacturer's warranty would not apply to the range sold to Shay; there is strong evidence, including Luther's own testimony, that it did. Neither was the jury required to believe that Jecker told Luther that he had some personal business in Refugio and would make the trip and replace the defective or broken parts of the range on his own time. He did, of course, visit with his wife's relatives while in their home. The evidence also reflects that after leaving the Shay home he visited a recreation club in Refugio and loitered there for some time, drinking beer and playing pool, before beginning the return trip to Palacios. But the evidence is far from conclusive that visiting his wife's relatives and visiting the recreation club were the main or even motivating factors, in making the trip. There is no evidence that Jecker attended to any personal business on the trip.

Under governing law as announced herein, we hold that there is in the record evi-

dence of probative force supporting the jury's finding that Jecker was in the course of his employment when he was injured. We, accordingly, overrule appellant's Points of Error Nos. Two and Three.

Appellant's Point of Error No. One cites error on the part of the trial court in not submitting to the jury a definition of "state of intoxication" as that matter was submitted in Special Issue No. 3.

■ Under the provisions of section 1, Article 8309, injuries received while in a state of intoxication are not sustained in the course of employment. A defense urged to this suit was that Jecker was in a state of intoxication at the time of his injury. We have concluded that the trial court did not err in failing to submit the requested definition, since the phrase "state of intoxication" is commonly known and understood, and such point of error is accordingly overruled.

■ Points of Error Nos. Six and Seven maintain that there is no evidence to support the jury's finding in answer to said Special Issue No. 3, that the deceased was not in a state of intoxication at the time of the fatal accident, and that such finding is so contrary to the overwhelming preponderance of the evidence as to be manifestly unjust and unfair. We have carefully reviewed the entire record and have concluded that the evidence is sufficient to sustain the jury's finding on Special Issue No. 3, and these points of error are likewise overruled.

■ Appellant's Points of Error Nos. Four and Five cite error on the part of the trial court in rendering judgment for plaintiff on the basis of the jury's finding in answer to Special Issue No. 2 that plaintiff would suffer manifest hardship and injury if the compensation awarded, if any, were not paid in a lump sum, for the reasons that such finding was not supported by any evidence, or was so contrary to the overwhelming preponderance of the evi-

dence as to be manifestly unjust or unfair. Mrs. Jecker, the plaintiff, had four grandchildren, her own children being over 21 years of age, so it may justifiably be assumed that she was of somewhat advanced years of age; she began teaching school after the death of her husband, from which occupation she derived some income and had a "little income" from "oil and gas", and some additional income from other sources. Her testimony was that if she did not receive a lump sum as compensation for the death of her husband it would work an undue hardship on her because "I might have to teach school longer. Well, I would say since I am old I can use a lump sum better than I can over a period of years * * * If I were younger I would rather have the installments along over a period of years but I don't have too many years left and there are things I would rather like to do now if I have the money rather than have it coming in small installments." We feel that from all the evidence, viewed in a light most favorable to the jury's finding, that the jury was justified in arriving at its conclusion of hardship. Quoting from Federal Underwriters Exchange v. Brigham, Tex.Civ.App., 184 S.W.2d 849:

"The statute leaves it to the sound discretion of the court or jury to determine as to what constitutes a 'special case' authorizing the award of a lump sum, and their findings should not be disturbed unless a manifest abuse of discretion is shown. Texas Employers' Ins. Ass'n. v. Downing, Tex.Civ. App., 218 S.W. 112, at page 120, writ refused; Consolidated Underwriters v. Saxon, supra [Tex.Com.App., 265 S.W. 2d 143]; Indemnity Ins. Co. of North America v. Wright, Tex.Civ.App., 69 S.W.2d 438, writ dismissed."

We find no manifest abuse of discretion here, and must therefore overrule appellant's Points of Error Nos. Four and Five.

Having disposed of all points of error unfavorably to appellant, the judgment of the trial court is affirmed.