Jean WALDEN et al., Appellants,

v.

ROYAL GLOBE INSURANCE
COMPANY, Appellee.

No. 8127.

Court of Civil Appeals of Texas,
Beaumont.

Dec. 28, 1978.

Rehearing Denied Jan. 18, 1979.

Tommy Jacks, Austin, for appellants.

Burnie Burner, Austin, for appellee.

KEITH, Justice.

Our prior opinion in this cause dated November 16, 1978, is withdrawn and this opinion substituted in lieu thereof.

This is a workers' compensation case wherein the widow and the guardian of two minor children recovered maximum death benefits after a trial by jury. The accrued weekly payments were ordered paid immediately with interest, and the remaining weekly payments were ordered paid weekly in accord with the provisions of *Tex.Rev. Civ.Stat.Ann. Art. 8306, Sec. 8(b) (Supp. 1978–79)*. The court sustained the carrier's exception to claimants' allegations seeking a lump sum payment of the weekly death benefits.[1] From the pleadings and the charge we learn that there were contested issues of fact as to deceased's employment status, whether his injury was in the course of his employment, and as to whether the carrier was in fact the workers' compensation insurer for deceased's employer.

The jury answered the contested issues in favor of the claimants and the judgment was entered for claimants for the maximum amounts payable in accordance with the statute. Claimants have perfected a limited appeal contending that the trial court erred in sustaining the special exception and in refusing to pass upon the issue of lump sum payment of the death benefits. We affirm.

Before its amendment in 1973, *Art. 8306, Sec. 8, Tex.Rev.Civ.Stat.Ann.*, read:

"Sec. 8. If death should result from the injury, the association hereinafter created shall pay the legal beneficiaries of the deceased employee a weekly payment equal to sixty per cent (60%) of his average weekly wages, but not more than Forty-nine Dollars ($49) nor less than Twelve Dollars ($12) per week, for a period of three hundred and sixty (360) weeks from the date of the injury."

Except for an early change in the designation of the statutory beneficiaries and periodic increases in the amount of weekly payments, this language has remained unchanged for sixty years.[2]

---

1. The special exception was directed to claimants' pleading, in a conclusory manner, of their desire for a lump sum because " 'manifest hardship and injustice would otherwise result to them if the benefits were paid in small weekly payments rather than a lump sum.' "

2. In the original 1913 Act the benefits were $15–$5. Acts 1913, 33rd Leg., Ch. 179, pp. 429, 431.

When the Compensation Act was reenacted in 1917, the amount of payments were unchanged. Acts 1917, 35th Leg., Ch. 103, pp. 269, 273.

The payments were increased in 1923 to $20–$7 per week. Acts 1923, 38th Leg., Ch. 177, pp. 384, 385.

The payments were increased again in 1947 to $25–$9. Acts 1947, 50th Leg., Ch. 307, pp.

From the earliest times, our courts had approved the lump-summing of death payments, one of the first cases being *Texas Employers' Ins. Ass'n v. Boudreaux*, 231 S.W. 756, 758 (Tex.Com.App.1921, holding approved). Under this statute it had been determined authoritatively that where death resulted from a compensable injury, the surviving wife had an unconditional right to the compensation and that such right was vested and survived the beneficiary's death. *Burris' Estate v. Associated Employers Insurance Co.*, 374 S.W.2d 223, 225 (Tex.1963).

In short, before the 1973 amendment, the death benefits could be lump-summed. The amount was fixed, both as to the weekly payment and to the number of weeks. The discount factor was fixed by statute and all a claimant had to prove was his or her entitlement thereto under the provisions of *Art. 8306, Sec. 15.* See *Western Alliance Insurance Company v. Jecker*, 371 S.W.2d 904, 911 (Tex.Civ.App.—El Paso 1963, no writ), and authorities therein cited.

The 1973 amendment to *Sec. 8 of Art. 8306*, was not merely cosmetic nor was it a simple housekeeping change. Instead, the legislature took a completely new approach to the question of death benefits. It jettisoned the specific number of weekly payments in favor of a period equal to the lifetime of the widow while she remained unmarried; and, as to the children, it provided for long periods during which such children would be entitled to the weekly payments, even up to age twenty-five in certain instances. While lengthy, we quote the pertinent portions of the amendment in the margin.[3]

Even prior to the 1973 amendment to *Art. 8306, Sec. 8,* it was generally agreed that workers' compensation benefits ordinarily should be paid weekly. One of the most cogent statements of the rule is to be found in this language taken from *Texas Employers Insurance Association v. Motley,* 491 S.W.2d 395, 397 (Tex.1973), wherein our Chief Justice restated the rule:

"When the workmen's compensation act was passed, the weekly payments were to be in lieu of the wages which the workman could not earn because of his incapacity. There was, as we understand it, a feeling that it might not be wise to give

521, 522. Again, in 1957, the maximum weekly payments were increased to $35 but the minimum payment was left unchanged. Acts 1957, 55th Leg., Ch. 397, pp. 1186, 1188. In 1969, the weekly payments were increased to $49–$12, but the Act was not changed otherwise. Acts 1969, 61st Leg., Ch. 18, p. 48.

3. "Sec. 8. (a) If death results from the injury, the association shall pay the legal beneficiaries of the deceased employee a weekly payment equal to sixty-six and two-thirds per cent (66⅔%) of the employee's average weekly wage, but not less than the minimum weekly benefit nor more than the maximum weekly benefit set forth in Section 29 of this article.

"(b) The weekly benefits payable to the widow or widower of a deceased employee shall be continued until the death or remarriage of the beneficiary. In the event of remarriage a lump sum payment equal in amount to the benefits due for a period of two (2) years shall be paid to the widow or widower. The weekly benefits payable to a child shall be continued until the child reaches eighteen (18) years of age, or beyond such age if actually dependent, or until twenty-five (25) years of age if enrolled as a full-time student in any accredited educational institution. All other legal beneficiaries are entitled to weekly benefits for a period of three hundred and sixty (360) weeks.

"(c) Upon the termination of the eligibility of any child to receive benefits, the portion of compensation paid to such child shall thereafter be paid to any remaining child or children entitled to benefits under the provisions of this Act. If there is no other eligible child then such benefits shall be added to those being paid to the surviving spouse entitled to receive benefits under the provisions of this Act.

"(d) The benefits payable to a widow, widower, or children under this section shall not be paid in a lump sum except in events of remarriage or in case of bona fide disputes as to the liability of the association for the death. Any settlement of a disputed case shall be approved by the board or court only upon an express finding that a bona fide dispute exists as to such liability.

"Upon settlement of all cases where the carrier admits liability for the death but a dispute exists as to the proper beneficiary or beneficiaries, the settlement shall be paid in periodic payments as provided by the law, with a reasonable attorney's fee not to exceed twenty-five per cent (25%) of the settlement. The attorney's fee shall be paid periodically and not in a lump sum."

the laborer, unskilled in money management, a large sum of money in a lump sum. It might be best for him, and his family, if the money were paid to him weekly,—as he had been receiving his wages. Provision was made, however, in Section 15 of Article 8306, for payment to the workman in a lump sum if to do otherwise would result in manifest hardship."

But, as one court noted, "While the language of the statute . . . might indicate that the employee should be required to make a strict showing in order to be entitled to a lump sum award, a study of the decisions of our courts indicates that they have gone far in upholding verdicts allowing recovery in a lump sum." *Federal Underwriters Exchange v. Craighead,* 168 S.W.2d 699, 700–701 (Tex.Civ.App.—Fort Worth 1943, writ ref'd w. o. m.).

The practice of indiscriminate lump-summing has been criticized by some scholars. See, e. g., *3 Larson, The Law of Workmen's Compensation § 82.71, at 15–573 (1976),* from which this quotation is taken:

"In some jurisdictions, the excessive and indiscriminate use of the lump-summing device has reached a point at which it threatens to undermine the real purposes of the compensation system. Since compensation is a segment of a total income insurance system, it ordinarily does its share of the job only if it can be depended on to supply periodic income benefits replacing a portion of lost earnings. If a partially or totally disabled worker gives up these reliable periodic payments in exchange for a large sum of cash immediately in hand, experience has shown that in many cases the lump sum is soon dissipated and the workman is right back where he would have been if workmen's compensation had never existed. One reason for the persistence of this problem is that practically everyone associated with the system has an incentive— at least a highly visible short-term incentive—to resort to lump-summing. The employer and the carrier are glad to get the case off their books once and for all. The claimant is dazzled by the vision of perhaps the largest sum of money he has ever seen in one piece. The claimant's lawyer finds it much more convenient to get his full fee promptly out of a lump sum than protractedly out of small weekly payments . . . . .

". . . Enough experience has been gained by now to prove that a broad statutory requirement such as that the granting of a lump sum must be in the best interest of the worker is no guarantee against abuse of the practice."

■ It is apparent from a reading of the new *Section 8* that the legislature meant to change the practice with reference to lump-summing of death benefits. *Section 8(d)* of the new statute begins with the emphatic language, "The benefits payable to a widow, widower, or children under this section shall not be paid in a lump sum", followed by two exceptions—"except in events of remarriage or in case of bona fide disputes as to the liability of the association for the death."

■ In the event of the remarriage of the widow or widower, such claimant is entitled to "a lump sum payment equal in amount to the benefits due for a period of two (2) years . . . ." *Art. 8306, Sec. 8(b).* And, it is to be noted that there is no reference to hardship or injustice nor to a discount. Attorney General Hill, in an opinion addressed to the Chairman of the Industrial Accident Board, considered the question and concluded that, since none of the four categories to which the statutory discount is applicable includes the kind of lump sum involved upon remarriage of a widow under amended *Sec. 8(b),* the lump sum payment should be made without a discount. We adopt the reasoning found in the opinion (H. 862, August 12, 1976), it being set out in the margin.[4]

4. Opinion H–862, p. 3: "The lump sum payment made to the beneficiary [under Sec. 8(b) upon remarriage] is not the result of the par-

ties' agreement, or of an order of a court or the Industrial Accident Board, but is totally the result of the statutory directive. Neither do we

The other exception permitting payment in a lump sum is specifically confined to "settlement of a disputed case" where the board or court makes "an express finding that a bona fide dispute exists as to such liability."

To recapitulate, the express language of the new Act permits lump sum payments only in the event of remarriage and *settlement* wherein a bona fide dispute exists as to liability. The reason for the first is apparent: upon remarriage, the widow no longer needs the payment in lieu of wages for, presumptively, she has replaced her former wage earner. The second is present so that neither the claimants nor the carrier will be required to go for an "all or nothing" battle to determine liability.

With a bona fide dispute as to liability, the parties are enabled to give and take so as to reach a settlement which, if approved by the board or court, may be to the best interest of all parties to the controversy.

Indeed, while this cause was under submission, our Supreme Court considered the statute in detail. See *Twin City Fire Insurance Company v. Cortez,* 576 S.W.2d 786 (Tex.1978) (not yet reported except in 22 Tex.Sup.Ct.J. 156, December 20, 1978). We consider our opinion to be consistent with both the majority and the minority opinions in *Cortez.*

■ Claimants argue at length that we must interpret the law liberally so as to protect the injured workers and their beneficiaries. The answer to this contention of the claimants is to be found in *Second Injury Fund v. Keaton,* 162 Tex. 250, 345 S.W.2d 711, 714 (1961), where the Court said:

"[W]e are not permitted to give a *liberal* construction where the law is expressed in plain and unambiguous language as here. We are not to look to the consequences of our action here in limiting the application of the statute to the exact words of the Act." (emphasis in original)

Recently, in *Ex parte Roloff,* 510 S.W.2d 913, 915 (Tex.1974), the Court restated the rule:

"If the statute being construed is plain and unambiguous, there is no need to resort to rules of [statutory] construction, and it would be inappropriate to do so."

*Accord*: *Brantley v. Phoenix Ins. Co.,* 536 S.W.2d 72, 74 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd); *Legate v. Bituminous Fire & Marine Insurance Co.,* 483 S.W.2d 488, 490 (Tex.Civ.App.—Beaumont 1972, writ ref'd n. r. e.).

■ Claimants argue that there are inconsistencies in *Art. 8306,* pointing to the lump sum provisions in *Sec. 8(b)* and *(d)* and *Sec. 15.* The new section (*Sec. 8*) is, of course, to some extent inconsistent with *Sec. 15*; but, this does not mean that we should ignore the new and enforce the old section. Instead, we adopt the rule stated in *Black v. American Bankers Insurance Company,* 478 S.W.2d 434, 437 (Tex.1972):

"It is a cardinal rule of statutory construction that all sections, words and phrases of an entire act must be considered together; every provision should be construed with every other portion to produce a harmonious whole; and one provision will not be given a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such construction if standing alone."

*Section 8(d)* is not a total bar to lump sum payments and there are situations when the board or court may *compel* lump sum payments. See Attorney General Hill's opinion, supra, to the effect that the lump sum accrues as a matter of law upon remarriage. Thus, when so construed, we reach an harmonious result and each provision stands.

---

believe that payment in the event of remarriage constitutes an 'advanced payment of compensation.' The statute clearly indicates that the *lump sum payment is due at the time of the* beneficiary's remarriage. As a result, it cannot be characterized as an 'advanced payment.'

The same reasoning is applicable to the fourth category. The lump sum payment does not represent compensation 'paid before becoming due,' because it is in fact *due* at the time of the remarriage." (emphasis in original)

The claimed inconsistency as to discount is also easily explained. No discount is allowed when the widow remarries for the simple reason that the lump sum payment is not an *advanced* payment; it is simply payment of what is then due, owing, and payable at par, not at a discount.

█ Another point of some concern to which parties have not supplied an easy answer is: How do you compute the present value of the widow's weekly payment? Certainly, we all recognize actuarial tables with reference to life expectancy and they are universally accepted. However, the propensity or the likelihood of a widow remarrying is not, in our opinion, subject to such actuarial proof. Indeed, in our study we have found but one case on the subject, *Osborn v. Osborn*, 252 S.W.2d 837, 840 (Mo. App.1952), where the court states:

"Missouri Jurisprudence has not yet advanced to the point where re-marriage statistics have much evidentiary weight in solving this difficult problem."

We say the same thing about Texas and call attention to the reasons assigned by the Missouri court (252 S.W.2d at 840) which we now adopt as applicable to our case.[5]

Under the new statute which we review, we hold that the claimants were not entitled to go to the jury on the question of lump sum, and that the trial court properly sustained exceptions to the pleading.

█ The only other point brought forward is the claimed error of the trial court in refusing to award the attorney's fees in a lump sum. We decline to consider this complaint because it was not properly preserved in the trial court. This was a limited appeal confined to the sole point of the claimed error in sustaining the special exceptions. There was no other complaint reserved in the notice of the limited appeal. Consequently, it will not be further noticed. See *Garcia v. Employers Casualty Company*, 519 S.W.2d 685, 687 (Tex.Civ.App.— Amarillo 1975, writ ref'd n. r. e.).

Finding no error, the judgment of the trial court is AFFIRMED.

DIES, Chief Justice, dissenting on Motion for Rehearing.

With respect, I dissent. In holding that a trial court has power to include a lump sum in a settlement, but not a judgment, the majority has, I believe, placed a powerful weapon in the hands of insurance companies to force a favorable settlement. The judgment in this case illustrates why by awarding $26.25 per week to the widow, $17.50 per week for each child, and $8.75 to plaintiffs' attorney.

Furthermore, the majority opinion has repealed *Tex.Rev.Civ.Stat.Ann. art. 8306, § 15* (Vernon 1967), which reads:

"In cases where death or incapacity in any degree results from an injury, the liability of the association may be redeemed by the payment of a lump-sum by agreement of the parties thereto subject to the approval of the Industrial Accident Board. Where in the judgment of the Board manifest hardship and injury would otherwise result, the Board may compel the association to redeem the liability by payment of the award of the Board in a lump-sum, and a discount shall be allowed for present payment in accordance with Article 8306a of the Revised Civil Statutes of 1925, as amended."

Of course, a district court has the same power as the Industrial Accident Board. *Tex.Rev.Civ.Stat.Ann. art. 8307, § 5* (Vernon Supp.1978).

I readily recognize the seemingly inconsistent portions of *art. 8306, § 8(d)* (Vernon Supp.1978) and *art. 8306, § 15*, but it is our duty, if possible, to harmonize them. *Ex parte Roloff*, 510 S.W.2d 913 (Tex.1974); *Gerst v. Oak Cliff Savings & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex.1968); *Peterson v. Calvert*, 473 S.W.2d 314, 315 (Tex.Civ.App. —Austin 1971, writ ref'd).

---

5. In dictum, a majority of the Supreme Court has indicated that "remarriage tables" might be used appropriately in calculating the lump sum benefits due the widow or widower, but simply called the matter to the attention of the Legislature. *Twin City Fire Insurance Company v. Cortez*, supra, 576 S.W.2d at 786 n. 5 (22 Tex.Sup.Ct.J. at 158 n. 5).

*Railroad Commission of Texas v. Miller,* 434 S.W.2d 670, 672 (Tex.1968), admonishes us to "take statutes as [we] find them," to find

". . . its intent in its language, and not elsewhere. They [the courts] are not the law making body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain."

Quoted from *Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66, 70 (1920).

I, therefore, would interpret this act as giving a court authority to order a judgment benefit in a lump-sum upon findings of (a) manifest hardship and injury, and (b) the existence of a bona fide dispute as to liability.