TEXAS EMPLOYERS' INSURANCE
ASSOCIATION, Appellant,

v.

Wanda CRITZ, Widow of Willis Winford
Critz, Deceased, Appellee.

No. 8741.

Court of Civil Appeals of Texas,
Texarkana.

Aug. 5, 1980.

Rehearing Denied Aug. 26, 1980.

Wayne Pearson and Robert L. Wright, Buford & Ryburn, Dallas, for appellant.

John B. Wilson, Wilson & Williams, Paul N. Gold, Branson & Misko, Dallas, W. E. (Rip) Parker, Garland, for appellee.

HUTCHINSON, Justice.

Appellee, Wanda Critz, was awarded death benefits under Article 8306, § 8 of the Texas Workers' Compensation Act, by reason of the death of her husband on a job site while employed Big State Waterproofing Company. Under the entered judgment, death benefits are payable to the appellee weekly. However, the trial court awarded her attorneys their fee in a lump sum. The carrier, Texas Employers' Insurance Association, has perfected this appeal.

Appellee's husband, Willis Critz, died on July 2, 1975, at the age of 54, while employed by Big State Waterproofing Company as a tuckpointer. A tuckpointer is a person who cleans and repairs brick structures. On the day of his death, Mr. Critz, however, was doing roofing work rather than tuckpointing. He and four fellow employees were working on the roof of a five story building in Oklahoma City, Oklahoma. The roof was flat and was surrounded by a wall from two to four feet high. The crew was engaged in "flashing" work which entailed applying cold asphalt mastic to the area where the roof and the wall met. To do the work, the men had to stoop, bend, squat or kneel in order to trowel the material under copper sheets. The work day began at 7:00 a. m. There was testimony that Critz coughed some during the morning and at about 10:00 or 10:30 a. m. heaved a little. However, he continued to work, went to lunch, and returned to work. The temperature was about 85° at ground level

and there was testimony that it was 10° to 20° warmer on the roof. At about 1:45 p. m. Critz told the foreman to knock off his time because he was hot and sick and could work no longer. Critz then sat down in a doorway, drank some water and laid down on a grate. The foreman then told him he should go downstairs and he did. A short time later a co-worker was sent to check on him and Critz was found lying on his side, eyes open, mucus coming from his mouth, and dead. No autopsy was performed. Dr. Chapman, a forensic pathologist and chief medical examiner, investigated the death and signed the death certificate.

Trial was to a jury. The receipt of evidence began on Monday and was concluded on Friday afternoon, at which time the trial judge submitted to counsel a proposed charge to be submitted to the jury. This consisted of five special issues and four explanatory instructions. The following Monday, appellant filed its objections to the proposed charge which consisted of sixty–three objections and requested alternative issues. In addition, appellant's attorney dictated into the record approximately seventeen more objections to the proposed charge. All were overruled. The case was submitted to the jury on the explanatory instructions and the five special issues. Following the general charge the following instruction was given:

"A heart attack is not an injury in the course of employment if it was caused solely by injuries or conditions independent of and not aggravated by strain or over–exertion resulting from an employee's work or the conditions of his employment. However, a heart attack is in the course of employment if it is the result of aggravation, incitement or acceleration of pre–existing disease, infirmity, injury or condition, so as to have been produced or precipitated by strain or over–exertion resulting from the employee's work or the conditions of his employment."

After this instruction the issues and additional instructions were given. The issues (and the jury's responses) and instructions were:

"ISSUE NO. 1

Do you find from a preponderance of the evidence that Willis Winford Critz received an injury on or about July 2, 1975?

'Injury' means damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom, or the incitement, acceleration, or aggravation of any disease, infirmity, injury, or condition previously or subsequently existing, by reason of such damage or harm.

Answer 'We do' or 'We do not'.

Answer: <u>We Do</u>.

If you have answered Issue No. 1 'We do', then answer Issue No. 2; otherwise do not answer Issue No. 2.

"ISSUE NO. 2

Do you find from a preponderance of the evidence that he received such injury in the course of his employment by Big State Waterproofing Company?

'Injury in the course of employment' means any injury having to do with and originating in the work, business, trade, or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere.

Answer 'We do' or 'We do not'.

Answer: <u>We Do</u>.

If you have answered Issue No. 1 'We do', then answer Issue No. 3; otherwise do not answer Issue No. 3.

"ISSUE NO. 3

Do you find from a preponderance of the evidence that such injury was a producing cause of the death of Willis Winford Critz?

'Producing cause' means an injury or condition which, either independently or together with one or more other injuries or conditions, results in death, and without which such death would not have occurred when it did.

Answer 'We do' or 'We do not'.

Answer: <u>We Do</u>.

If you have answered Issue No. 3 'We do,' then answer Issue No. 4; otherwise do not answer Issue No. 4.

"ISSUE NO. 4

Find from a preponderance of the evidence the amount of Plaintiff's average weekly wage as of July 2, 1975, which would be just and fair to both Plaintiff and Defendant.

Answer in dollars and cents.

Answer: $320.00.

If you have answered Issue No. 3 'We do,' then answer Issue No. 5; otherwise do not answer Issue No. 5.

"ISSUE NO. 5

Find from a preponderance of the evidence the amount of expenses incurred by Wanda Critz for the funeral and burial of Willis Winford Critz.

Answer in dollars and cents.

Answer: $1232.45."

Appellant here presents twenty–one points of error, divided into three groups for argument purposes. The first group, composed of the first fifteen points of error, complains of the manner in which the case was submitted.

Appellant asserts that the trial court's explanatory instruction on "heart attack in the course of employment" constitutes a comment on the weight of the evidence in that it assumes Mr. Critz did, in fact, sustain a heart attack. Rule 277, Tex.R.Civ.P., governs the giving of instructions to the jury by the trial court and, as amended in 1973, provides in part:

"In submitting the case, the court shall submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict and in such instances the charge shall not be subject to the objection that it is a general charge.

.     .     .     .     .

"The court shall not in its charge comment directly on the weight of the evidence or advise the jury of the effect of their answers, but the court's charge shall not be objectionable on the ground that it .  .  .  advises the jury of the effect of

their answers where it is properly a part of an explanatory instruction or definition."

We do not agree with the appellant's assertion. It is true that the trial court should not directly comment on the evidence, but the court may do so incidentally. See page 45 of Pope & Lowerre, *The State Of The Special Verdict–1979*, 11 St. Mary's L. J. 1–57 (1979). The instruction was to some extent a comment on the weight of the evidence in that it was a recognition by the trial judge that there was sufficient evidence that the employee had sustained a heart attack to justify its submission to the jury. The instruction was no more than an incidental comment on the weight of the evidence, and if such was error, it was indeed harmless.

Appellant further contends that the placement of the instruction relative to "heart attack in the course of employment" in the forepart of the charge rather than in connection with a particular issue was misleading to the jury and therefore error. It asserts that the definition of heart attack as an injury in the course and scope of employment is not consistent with the general "injury" and "injury in the course of employment" definitions given along with the first two special issues. Neither the general definition of injury given in connection with special issue No. 1 nor the definition of injury in the course of employment given in connection with special issue No. 2 contained an explanation of the difference between a compensable and a noncompensable heart attack. However, the appellant and the appellee were and are in agreement that the case was tried throughout on a heart attack theory rather than on the theory of a general injury death and it must be assumed that the jury read the charge as a whole and interpreted the language used in light of the evidence introduced by the parties. *Texas Employers Ins. Ass'n. v. Thrash*, 136 S.W.2d 905, 907 (Tex.Civ.App. El Paso 1940, writ dism'd jdgmt. cor.). Yet, appellant insists that general workers' compensation issues are not appropriate in a heart attack case and asserts that the only

proper method is as suggested by 2 Texas Pattern Jury Charges 29.02, 29.04 and 29.05. In doing so, the case of *Continental Insurance Company v. Marshall*, 506 S.W.2d 913, 917 (Tex.Civ.App. El Paso 1974, no writ), and several others are cited. It is true that these cases do approve the use of the alternative issues for heart attack cases, but neither of the cited cases required their use and no case has been cited or found that requires these issues to be used. It is not generally necessary for the special issues to describe the injury or injuries relied upon, the ultimate issues in a general injury case being only whether or not the claimant received an injury in the course of his employment which was a producing cause of disability or death. *Southern Underwriters v. Boswell*, 138 Tex. 255, 158 S.W.2d 280, 284 (1942); *Maston v. Texas Employers' Insurance Ass'n.*, 160 Tex. 439, 331 S.W.2d 907, 909 (1960); *Texas Employers' Insurance Association v. Rogers*, 368 S.W.2d 21, 25 (Tex.Civ.App. Amarillo 1963, writ ref'd n.r.e.). In the instant case, the use of Texas Pattern Jury Charges 29.02, 29.04 and 29.05 from hindsight might be considered preferable, but we do not believe the failure to use them, if error, was reversible error.

■ Appellant also complains of the trial court's conditioning an answer to special issue No. 3 upon an affirmative answer to special issue No. 1 rather than upon an affirmative answer to special issue No. 2 as suggested by 2 Texas Pattern Jury Charges. Appellant contends that by so doing the court made a prejudicial comment on the weight of the evidence by, in effect, instructing the jury that an injury need not be connected with or arise out of one's employment in order to be compensable. In a *caveat* to the comment following PJC 29.05, it is stated:

"If there is a serious question as to whether either the injury or course of employment is established as a matter of law, this issue should be submitted unconditionally or conditioned only upon the issue which is clearly disputed."

Since the facts inquired about in both of the two preceding issues were disputed, special issue No. 3, according to the Pattern Jury Charges, should have been submitted unconditionally. However, the conditioning of an issue differently from the manner proposed by the Pattern Jury Charges is not error unless the rights of a party have been prejudiced to an extent that an improper judgment may have been rendered. Appellant's argument is that such submission of special issue No. 3 was calculated to cause the jury to speculate that to be compensable an injury or death need not be related to one's employment. Yet appellant offers no explanation as to how the conditional submission of special issue No. 3 informed the jury that an injury need not be in the course of employment to be compensable. The issue as submitted does not advise the jury of the effect of their answer. At most, the conditioning of the third issue on the first issue merely indicates that an injury can be the producing cause of death without being in the course of employment. No reversible error is demonstrated.

■ Appellant next assert that the court erred in instructing the jury that the word "injury" includes "the incitement, acceleration, or aggravation of any disease, infirmity, injury, or condition previously or subsequently existing, by reason of such damage or harm" for the reason that appellee did not plead a right to recover on the basis of any incitement, aggravation, or acceleration of any disease, infirmity, injury or condition previously or subsequently existing. In other words, appellant contends that appellee must have specifically pleaded aggravation of a pre-existing condition in her petition in order to justify or permit the inclusion of the concept in the definition of injury. In support appellant relies upon *Burnett v. File*, 552 S.W.2d 955, 958 (Tex.Civ.App. Waco 1977, writ ref'd n.r.e); *Gill v. Transamerica Insurance Company*, 417 S.W.2d 720 (Tex.Civ.App. Dallas 1967, no writ); *City of Austin v. Cook*, 333 S.W.2d 398 (Tex.Civ.App. Austin), *rev'd per curiam on other grounds*, 340 S.W.2d 482 (Tex. 1960), *opinion on remand*, 343 S.W.2d 545 (Tex.Civ.App. Austin 1961, writ ref'd n.r.e.); *Texas Employers Insurance Association v. Smith*, 374 S.W.2d 287 (Tex.Civ.App. Beau-

mont 1963, no writ). In *Gill v. Transamerica Ins. Co.*, the trial court refused to submit a definition of injury which did include aggravation and the appellate court held that such refusal was error, pointing out that an injured employee may not be denied compensation because an injury aggravated a pre–existing condition. In so doing, the court stated that where the pleadings and evidence present the question of aggravation, the definition of "injury" should be extended. However, the court did not discuss what pleadings are required to support the extended instruction. In the first *City of Austin* case, the Court of Civil Appeals merely commented that any objection to the submission of the extended definition of injury could be remedied on retrial. The Supreme Court reversed on other grounds. In its second opinion, the Court of Civil Appeals first concluded that no reversible error was shown in the court's definition of "injury" and on rehearing stated that the objection had been waived. In the *Smith* case, the Court of Civil Appeals stated that the trial court should not have included aggravation in the definition but that the defendant had not demonstrated and the court could not see how the defendant could have been harmed. It should be noted that requirements for pleading aggravation were not discussed and no authority was given for the assertion that the court should not have included the aggravation definition in its charge.

Appellee, in her original pleading filed on March 5, 1976, alleged: ". . . While in such employment the deceased suffered acute coronary insufficiency which was the producing cause of his death on July 2, 1975. . . ." In her amended pleading upon which she went to trial, appellee plead: ". . . and due to the duties and hazards of said employment, he sustained 'injury' within the meaning of the Workmen's Compensation Act of the State of Texas, to his heart and blood-vessels, which was 'a producing cause', as said phrase is used under the Workmen's Compensation Act of the State of Texas, of his death on July 2, 1975. . . ." No exception was made to either of these allegations. The jury panel, on voir dire, was interrogated, without objection, as to their ability to follow the law as it relates to the aggravation of a pre–existing condition. The entire case was tried upon the theory of the aggravation of a pre–existing condition. Each of the three medical doctors was interrogated on both direct and cross–examination by appellant and appellee in that regard, and no objection thereto was made upon the basis that there were no supporting pleadings. In fact, no objection was made to the trial of the case upon the aggravation theory until the trial court had prepared and presented the charge. At this time the objection was made along with some seventy or eighty others, many of which were voluminous and unfounded. Tex.R.Civ.P. 274. Appellant has not shown a rule, statute, or case that requires the specific pleading of aggravation and certainly has not demonstrated that it was misled or injured by the failure to so plead. This point of error is therefore overruled.

■ Appellant presents four points of error in regard to the trial court's determination of and the granting of judgment for a lump sum attorney fee. The court arrived at the amount of the fee by reference to the Widow's Pension Tables, which considers both life expectancy and the expectancy of remarriage, and awarded appellee's attorneys 25% of the probable future payments, discounted to present value, as a lump sum fee. Appellant asserts that its liability cannot be determined by reference to the Widow's Pension Tables or otherwise in light of the dual contingencies of death or remarriage of the appellee; that by awarding the lump sum attorney fee its liability is reasonably calculated to exceed the amount permitted by law; and, that the award of the lump sum attorney fee is based upon an impermissible finding of fact by the court as opposed to that of the jury. In support of these assertions, appellant relies upon *Walden v. Royal Globe Ins. Co.*, 577 S.W.2d 296 (Tex.Civ.App. Beaumont 1978, writ ref'd n.r.e.); *Osborn v. Osborn*, 252 S.W.2d 837 (Mo.App.1952); and the dissent in *Twin City Fire Ins. Co. v. Cortez*,

576 S.W.2d 786 (Tex.1978). The *Walden* case addressed the question of whether or not the trial court could award lump sum benefits to the survivors under Article 8306, § 8, Tex.Rev.Civ.Stat.Ann., and held that such could be done only in the specifically enumerated situations set out in the statute. The court there, citing the *Osborn* case, stated that the likelihood of a widow's remarriage is not subject to actuarial proof and that an actuarial determination of the likelihood of remarriage was too speculative to have any evidentiary value. The dissent in *Cortez* did state that ". . . there probably is nothing more uncertain than the chances of, or the time for, the remarriage of a widow or widower. . . ." However, the majority held that a widow should be awarded a lump sum payment in a death benefit case when the insurance company violates Article 8307, § 5a, Tex.Rev.Civ. Stat.Ann., by failing to pay a board award without justifiable cause and by implication approved the use of remarriage tables. Here the appellee did not seek to have her payments reduced to a lump sum, and we are concerned only with the attorney's fee. The exact question has been before our appellate courts at least three times and each time the award of the attorney fee in a lump sum has been approved. *Liberty Mutual Insurance Co. v. Ramos*, 543 S.W.2d 392 (Tex.Civ.App. El Paso 1976, no writ); *Texas Employers Insurance Association v. Flores*, 564 S.W.2d 831 (Tex.Civ.App. Fort Worth 1978, writ ref'd n.r.e.); *Texas Employers Insurance Association v. Miller*, 596 S.W.2d 621 (Tex.Civ.App. Waco 1980, no writ). As noted in *Cortez*, at least two states, Mississippi and New York, have by statute provided for the use of remarriage tables to calculate the remarriage expectancy of a widow or widower, and we can see no reason why such tables should not be used. The amount of the attorney's fees to be allowed in compensation cases is a matter for the trial court to determine without the aid of a jury, and the amount of the recovery is within its discretion. *Texas Employers Insurance Association v. Motley*, 491 S.W.2d 395 (Tex.1973).

 Appellant's contention that the jury should have made the findings as to the life and remarriage expectancy of the appellee is without merit. Article 8306, § 7d, Tex.Rev.Civ.Stat.Ann., states that the court shall fix and allow attorney's fees. The amount of the fees and the method of their determination is a matter for the discretion of the trial court. *Texas Employers Insurance Association v. Hatton*, 152 Tex. 199, 255 S.W.2d 848 (1953); *Employers' Liability Assurance Corporation v. Sims*, 67 S.W.2d 445 (Tex.Civ.App. Dallas 1933, writ ref'd); *Fidelity Union Casualty Co. v. Dapperman*, 53 S.W.2d 845 (Tex.Civ.App. Amarillo 1932, writ ref'd).

The judgment of the trial court is affirmed.